Steven LUDWIG, Julie Ludwig and Wausau Insurance Companies, Plaintiffs-Appellants-Cross-Respondents,

v.

Donald DULIAN, Defendant-Respondent-Cross-Appellant,††

GERMANTOWN MUTUAL INSURANCE COMPANY, Defendant-Respondent-Cross-Respondent-Cross-Appellant.†

Court of Appeals

*No. 97–1451. Submitted on briefs February 2, 1998.—Decided March 17, 1998.*

(Also reported in 579 N.W.2d 795.)

††Petition to cross review denied.
†Petition to review denied.

782

On behalf of the plaintiffs-appellants-cross-respondents, the cause was submitted on the briefs of *Harry R. Hertel* of *Hertel & Gibbs, S.C.* of Eau Claire.

On behalf of the defendant-respondent-cross-respondent-cross-appellant, the cause was submitted on the brief of *Randall Skiles* of *Stern, Skiles & Ward* of Madison.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Beverly Wickstrom* of *Misfeldt, Stark, Richie & Wickstrom* of Eau Claire.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J. Steven and Julie Ludwig, along with Wausau Insurance Companies, appeal a judgment concluding that, as a matter of law, Donald Dulian intended to injure a police officer when he resisted

arrest.[1] They contend the jury's negligence verdict should be reinstated. Dulian cross-appeals and asserts that he is entitled to a new trial because the court erred in several evidentiary rulings, and erred by refusing to dismiss Ludwig's claims for lack of medical testimony regarding causation. Germantown Mutual Insurance Company contends the court correctly held that Dulian intended to injure Ludwig and therefore it is exempted from coverage. It also cross-appeals, contending that the trial court erred by imposing the ordinary rather than the middle burden of proof upon Ludwig.

We conclude that the court erred by finding as a matter of law that Dulian intended to injure the officer. We further conclude that the court applied the correct burden of proof, it properly exercised its discretion in its evidentiary rulings, and it did not err by refusing to dismiss the case for failure to introduce medical testimony establishing causation. We therefore reverse in part and affirm in part.

On February 23, 1993, Brett Heino, a Wisconsin State Patrol trooper, observed a speeding pickup truck. Heino attempted to stop the vehicle, which eventually pulled into a residential driveway. As Heino questioned the driver, Dulian emerged from the passenger side of the vehicle and questioned Heino's decision to arrest the driver. When Dulian refused to leave the scene, the officer placed him under arrest. Dulian, however, moved away from the truck and went into the

---

[1] Ludwig also appeals from the trial court's order denying his motion for reconsideration of the decision to change the jury verdict. For purposes of discussion, we treat the judgment and order as one issue, namely whether the trial court erred by finding, as a matter of law, that Dulian intended to injure Ludwig when resisting arrest.

residence, which turned out to be his home. About this time another officer, Eugene Gutsch, arrived.

The versions differ as to what occurred inside the home. The officers followed Dulian into the home and found him sitting on a kitchen counter. Dulian refused to leave with them and the officers requested backup. Three additional officers arrived, including officer Ludwig. A verbal exchange occurred between Dulian and the officers, which included Dulian using extensive profanity. The officers then attempted to physically restrain Dulian.

Heino testified that Dulian resisted, pushed back hard against the counter, and engaged the officers in a violent struggle. Another officer observed Ludwig bounce off a counter top and have his back bent across the counters when the officers and Dulian were "careening off the counter[ ]top and the island area." On the other hand, Dulian testified that he did not push Ludwig into a cabinet. He further stated he did not recall having contact with Ludwig or seeing any officers come into contact with a cabinet.

Ludwig brought suit against Dulian claiming Dulian negligently caused him back injuries. Dulian asserted contributory negligence on Ludwig's part. The jury found that Dulian negligently injured Ludwig and that Ludwig was not negligent. Having found that Dulian negligently caused injury to Ludwig, the jury did not reach the question of whether Dulian intentionally injured Ludwig.

Subsequently, Germantown presented several post-verdict motions. The trial court directed a verdict in favor of Germantown finding that Dulian intended as a matter of law to injure Ludwig. It concluded: "[I]f one resists arrest, one is intending to do so, and a natural consequence of resisting arrest is that the officers

involved have to take some action and one of those actions may result in injury." In a subsequent hearing, the court appeared to limit its ruling to circumstances in which there is physical, rather than passive, resistance. It stated:

> [W]hen somebody is physically resisting, using force against an officer or officers, and, as in this case, shoves the officer into a solid object such as a counter[ ]top, that creates, as far as I'm concerned, a high probability that there will be some injury. It may be a very nominal injury. Seems to me that you're getting to get a high probability of some kind of injury. . . . I think I'm right on my initial ruling that there was an intent as a matter of law.

In reaching its conclusion, the court relied on *Raby v. Moe*, 153 Wis. 2d 101, 450 N.W.2d 452 (1990). In *Raby*, the parents of a man killed during an armed robbery brought a civil action against the perpetrator and his insurer. *Id.* at 104, 450 N.W.2d at 453. The insurance company moved for summary judgment, arguing its policy excluded coverage for injury "expected or intended" by the insured. *Id.* The circuit court denied the motion and the jury ultimately concluded the insured negligently caused the man's death. *Id.* at 104–05, 450 N.W.2d at 453. The court of appeals affirmed, holding that the intent to inflict injury which triggers the policy exclusion was a question of fact properly submitted to the jury. *Id.* at 108, 450 N.W.2d at 454. Our supreme court reversed, holding that "some type of bodily injury is so substantially certain to occur during the commission of an armed robbery that the law will infer an intent to injure on behalf of the insured." *Id.* at 114, 450 N.W.2d at 457.

Our supreme court later discussed *Raby* and another case, *Poston v. USF&G*, 107 Wis. 2d 215, 320 N.W.2d 9 (Ct. App. 1982), and announced:

> [A] court cannot infer intent to injure as a matter of law merely because the insured's intentional act violated the criminal law.
>
> . . . .
>
> *Raby* and *Poston* stand for the proposition that an insured's conviction of a crime gives rise to an inference that the insured intended injury as a matter of law in only two situations: (1) if intent to injure is an element of the crime, *Poston*, 107 Wis. 2d at 219, and (2) if the crime in question involves the insured's committing an intentional act that carries with it "a substantial risk of injury or death," *Raby*, 153 Wis. 2d at 114.

*Loveridge v. Chartier*, 161 Wis. 2d 150, 171–72, 468 N.W.2d 146, 151–52 (1991).

Whether an issue is one of fact or law is a question of law we review de novo. *See Crowley v. Knapp*, 94 Wis. 2d 421, 429–30, 288 N.W.2d 815, 819–20 (1980). We conclude that the court erred by finding that Dulian intended to injure the officer as a matter of law.

While Dulian intentionally resisted arrest, it cannot be said as a matter of law that he intended injury to the officer or that a substantial risk of injury is the natural consequence of resisting arrest. *Raby* is distinguished by the inherently dangerous nature of armed robbery. The nature of resisting arrest, even where some measure of force is involved, cannot be equated with that of armed robbery as a matter of law. Rather, the facts surrounding the resistance, including the degree and duration of force exerted by the resistor, control the determination of whether an officer faces

substantial risk of injury and whether the resistor intended to injure the officer. Finally, intent to injure is not an element of resisting arrest. Section 946.41, STATS. Therefore, *Raby* does not compel as a matter of law the inference of such an intent when a person resists arrest.

That conclusion does not, however, end our analysis. We must determine whether Dulian's intentional act of resisting arrest precludes insurance coverage as a matter of law under the general principles condensed in *Loveridge*. In Wisconsin, an intentional-acts exclusion precludes insurance coverage only where the insured acts intentionally and intends some harm or injury to follow from the act. *Id.* at 168, 468 N.W.2d at 150. An insured intends to injure or harm another if he intends the consequences of his act, or believes they are substantially certain to follow. *Id.* In other words, intent may be actual (a subjective standard) or inferred by the nature of the insured's intentional act (an objective standard). *Id.* Therefore, an intentional-acts exclusion precludes insurance coverage where an intentional act is substantially certain to produce injury even if the insured asserts that he did not intend any harm.

Furthermore, the exclusion precludes coverage even if the harm that occurs is different in character or magnitude from that intended by the insured. *Id.* at 169, 468 N.W.2d at 151. For example, an intentional-acts exclusion precludes insurance coverage for severe eye injuries even though the insured subjectively intended only to sting the plaintiff by firing a greening pin at his body. *Id.*

Ordinarily, whether an insured subjectively or objectively intended harm or injury to result from an

intentional act is a question of fact. *Id.* However, a court may infer that an insured intended to injure or harm as a matter of law (an objective standard) if the degree of certainty that the conduct will cause injury is sufficiently great to justify such inference. *Id.*

There is no bright-line rule to determine when intent to injure should be inferred as a matter of law. Rather, each set of facts must be considered on a case-by-case basis; the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law. *Id.* at 169–70, 468 N.W.2d at 151. A court may infer intent to injure as a matter of law only in narrow circumstances. *Id.* at 170, 468 N.W.2d at 151. However, an insured cannot prevent a court from inferring his intent to injure as a matter of law by merely asserting he did not intend to injure or harm. *Id.*

Here, there is a factual dispute as to what Dulian did when resisting arrest. If the officers' version was uncontradicted, then the court could infer, as a matter of law, from these acts that Dulian intended to harm Ludwig. However, these facts are disputed and if the jury, as the fact finder in this case, accepted Dulian's version, one could not conclude as a matter of law that his acts during the resisting arrest would be substantially certain to produce injury. Therefore, we conclude that whether Dulian, when resisting arrest, intended to injure Ludwig is a question of fact.

We thus review the directed verdict to determine whether the facts support the court altering the jury's verdict. The trial court itself stated, "Certainly, there's credible evidence to support the jury's verdict." If there is any evidence, other than mere conjecture or incredible evidence to sustain the jury's verdict, the directed verdict must be denied. *Foss v. Town of Kronenwetter,*

789

87 Wis. 2d 91, 97, 273 N.W.2d 801, 804 (Ct. App. 1978). Dulian testified that he did not want to be arrested, but wanted to remain at home. Dulian testified he did not push Ludwig or have any physical contact with him. Evidence demonstrated that no one saw Dulian swing or kick at Ludwig, Dulian did not make threatening gestures to Ludwig, and he was unsure of where Ludwig was standing. There is evidence, however, that he did struggle with the other arresting officers causing Ludwig to fall over the counter top. The jury is the sole judge of witness credibility. *See State v. Toy*, 125 Wis. 2d 216, 222, 371 N.W.2d 386, 389 (Ct. App. 1985). Viewed in the light most favorable to Dulian, *see Village of Menomonee Falls v. Michelson*, 104 Wis. 2d 137, 154, 311 N.W.2d 658, 666 (Ct. App. 1981), we agree that credible evidence supports the jury's conclusion that Dulian acted negligently rather than intentionally. We therefore reinstate the jury's verdict.

Next, we turn to Germantown's argument that the court erred by imposing the ordinary rather than the middle burden of proof on Ludwig. The ordinary burden of proof is reasonable certainty by greater weight of the credible evidence. *See* WIS J I—CIVIL 200. Germantown cites WIS J I—CIVIL 205 to support its contention that the middle burden of proof is to be used in cases involving punitive damages and acts that can be considered criminal. It further contends that *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 294 N.W.2d 437 (1980), requires the middle burden of proof in punitive damage claims.

We conclude that the court correctly imposed the ordinary burden of proof. First, although Germantown requested punitive damages as one form of relief in its complaint, no jury question related to such punitive damages was submitted to the jury. Rather, the liabil-

ity and damages portions of the trial were bifurcated. *Wangen* requires the middle burden of proof to be applied "for the issue of whether the defendant's conduct was 'outrageous.' " *Id.* at 300, 294 N.W.2d at 458. Whether Dulian's conduct was outrageous would be litigated only if punitive damages became an issue in the trial. Where the verdict seeks a determination of liability arising out of negligence, the ordinary burden of proof applies. *See* WIS J I—CIVIL 107 and 108.

We turn now to Dulian's cross-appeal. Dulian first contends that the trial court erred by permitting Ludwig to show a videotape to the jury. Before exiting his squad car, Heino turned on a fixed video camera that pointed out the windshield of his car. It recorded the events that transpired in front of the squad car outside Dulian's home. Additionally, Heino wore a microphone that continued to record sound inside Dulian's home. Dulian contends that the videotape was a partial and inaccurate depiction of the events that occurred, as the video showed only a portion of what happened outside that evening and the microphone did not clearly record everything said inside Dulian's home.

We will uphold a trial court's decision to admit or exclude evidence unless it erroneously exercised its discretion. *See State v. Ross*, 203 Wis. 2d 66, 80, 552 N.W.2d 428, 433 (Ct. App. 1996). The decision to admit evidence must be upheld if there is a reasonable basis for the court's ruling. *Ritt v. Dental Care Assocs.*, 199 Wis. 2d 48, 72, 543 N.W.2d 852, 861 (Ct. App. 1995). We conclude that the admission of the videotape was not clearly erroneous; rather, the court had a reasonable basis to admit it. The tape was relevant to whether Dulian acted either negligently or intentionally. It was also relevant to the nature and extent of Dulian's resistance. Heino testified that although the tape did not

record everything and contained static, it did accurately reflect comments Dulian made and the sounds of struggle. The court instructed the jury that there were statements made that were not picked up by the microphone, and that an inability to hear those statements did not mean that the statements were not made. It further instructed the jury that they should not assume the microphone picked up everything that was said. In light of these cautionary instructions, we conclude that admission of the videotape was not an erroneous exercise of discretion.

Dulian also argues that the trial court erred by permitting Ludwig to testify about health care treatments he received and physical complaints he suffered following the incident. During direct examination, Ludwig testified about the incident. He concluded his testimony by stating that he experienced an injury which differed from prior back pain, and that he went to a hospital and was treated in the emergency room. Additionally, the doctor's note from the emergency treatment was admitted, and Ludwig testified that he had physical therapy, surgery and other treatment as a result of the injury. During cross-examination, further details about Ludwig's treatment emerged. Dulian contends that the evidence was irrelevant and prejudicial in the liability phase of the trial.

We conclude that the evidence was relevant and its admission was not an erroneous exercise of discretion. The court concluded during pretrial motions that it was necessary to permit a limited amount of discussion regarding health care Ludwig received after the incident because the nature of the injuries was relevant to the causation issue. We agree. We further conclude that the testimony regarding Ludwig's injuries was relevant to the nature of Dulian's conduct which is, in

turn, relevant to whether he intended to injure Ludwig. Finally, the testimony was not unduly prejudicial to Dulian. His counsel had the opportunity to cross-examine Ludwig, and attempted to challenge causation by establishing that Ludwig suffered previous back injuries.

Dulian also asserts the court erred in several additional evidentiary rulings by barring relevant testimony regarding Ludwig's negligence. Specifically, the barred testimony consisted of: (1) the type and nature of the charge against Dulian (a misdemeanor); (2) alternatives to arrest for individuals alleged to have committed misdemeanors (summons and complaint); and (3) training given to police officers related to techniques to keep themselves safe (RISC Management).

We agree with the trial court that Dulian's arrest for a misdemeanor rather than a felony is not relevant to Ludwig's alleged negligence. Further, evidence regarding alternatives to arrest was irrelevant. Ludwig responded to Heino's back-up request. Heino made the initial decision to arrest Dulian. Ludwig was thus not in a position to decide to employ any alternatives to arrest. Rather, he was bound by § 946.40, STATS., to aid a peace officer. Finally, we conclude that the court's exclusion of testimony regarding RISC management techniques was not an erroneous exercise of discretion. Dulian attempted to question Heino regarding RISC management. Heino's knowledge of such techniques, however, is irrelevant to demonstrating Ludwig's knowledge. Further, Heino was not designated an expert witness. Exclusion of the evidence was therefore proper.

Finally, Dulian contends that the trial court erred by refusing to dismiss Ludwig's claims for failing to introduce medical testimony establishing causation

between the arrest and Ludwig's injury. We disagree. Certified medical records were introduced at trial. Expert testimony is required where the question of causation is "not within the realm of the ordinary experience of mankind." *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 379, 541 N.W.2d 753, 757 (1995). We conclude that Ludwig was competent to testify to his injury on the basis of personal knowledge or experience. *See D.L. v. Huebner*, 110 Wis. 2d 581, 622, 329 N.W.2d 890, 909 (1983).

In sum, we hold that the court erred by finding that Dulian intended as a matter of law to injure Ludwig. We further hold that the court imposed the correct burden of proof upon Ludwig, it properly exercised its discretion in evidentiary rulings, and it did not err by refusing to dismiss Ludwig's claims for lack of medical testimony regarding causation.

*By the Court.*—Judgment and order reversed in part; affirmed in part. Costs awarded to Ludwigs and Wausau Insurance Companies.