MIDWAY MOTOR LODGE OF BROOKFIELD, a Wisconsin partnership, Plaintiff-Appellant,†

v.

The HARTFORD INSURANCE GROUP , a foreign insurer, Hartford Insurance Company of the Midwest, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, and Hartford Accident and Indemnity Company, Defendants-Respondents.

Court of Appeals

*No. 98–0615. Submitted on briefs January 20, 1999.—Decided March 24, 1999.*

(Also reported in 593 N.W.2d 852.)

†Petition to review denied.

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■
■■■

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David E. Leichtfuss* and *David A. Krutz* of *Michael Best & Friedrich LLP* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas R. Schrimpf* of *Hinshaw & Culbertson* of Milwaukee.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. Midway Motor Lodge of Brookfield (Midway) appeals from a summary judgment granted to The Hartford Insurance Group (Hartford). On appeal, Midway argues that Hartford breached an insurance contract with Hunzinger Construction Co. (Hunzinger), the insured, when Hartford failed to defend the negligence claims alleged against Hunzinger by Midway. Hartford maintains that its insurance policy with Hunzinger did not cover the claims in Midway's complaint. Midway disagrees, arguing that coverage exists or, in the alternative, is "fairly debatable" and, thus, Hartford breached the insurance contract by not seeking a judicial resolution of the coverage issue. Because Hunzinger assigned its rights in this action to Midway, Midway contends it is entitled to summary judgment against Hartford for the amount of the judgment entered against Hunzinger. We conclude that Hartford did not breach the contract with Hunzinger and is not bound to compensate Midway for its judgment against Hunzinger. The order for summary judgment in favor of Hartford is affirmed.

## BACKGROUND

The Midway Motor Lodge complex—a hotel, restaurant and office tower—was built between 1980 and 1981. Hunzinger was hired as the general contractor and construction manager for the construction project. Several years later, Midway discovered a problem with its underground sewer system. The underground sewer lines had broken or sagged in many places. The faulty sewer lines prevented the hotel's sewage from flowing into the municipal sewer system. Instead, the sewage was being discharged and settling beneath the hotel.

Midway filed suit against Hunzinger, among others, seeking compensation for $1.3 million in damages it experienced from the sewer system failure and the cost of its repair. Midway's complaint reads in relevant part:

14. Hunzinger owed a duty of care to Midway in performing its general contractor and construction manager services . . . .

15. Hunzinger was negligent in the performance of its services including . . . the following: failing to construct the underground sewer system of the building complex according to plans and specifications; failing to adhere to the proper means and methods of construction for underground sewer system; failing to properly supervise and inspect the work done by its employees, agents and subcontractors on underground sewer system; and by failing to adequately analyze the proposed changes for the construction project and the underground sewer system.

27

16. The negligent actions and omissions of Hunzinger were a proximate cause of the failure of the underground sewer system.

Midway also requested the following relief from Hunzinger on this negligence claim: "[A]n amount to be determined by the trier of fact for all incidental and consequential damages suffered . . . ."

After receiving notice of the lawsuit, Hunzinger tendered the defense to Hartford. Hartford was Hunzinger's insurance provider from February 1, 1979 through February 1, 1982. This coverage period coincides with the Midway construction project. After Hunzinger received no response from Hartford, it again requested the insurance carrier to provide a defense to Midway's cause of action. Hartford then phoned Hunzinger's counsel and informed him that Hartford's policies did not provide coverage because the underlying complaint did not allege property damage during the coverage period.

Hunzinger had also tendered defense on two other insurance companies which provided it coverage. Midway and Hunzinger reached a settlement agreement regarding the negligence claim. According to this $1 million settlement, the two other insurance carriers paid Midway a total of $300,000 on Hunzinger's behalf. All the parties agreed that Midway would receive a judgment against Hunzinger for the remaining $700,000. It was agreed that Midway would execute this judgment only against Hunzinger's Hartford insurance policy. Furthermore, Hunzinger was released from any liability for the $700,000 judgment and any other claims arising out of the lawsuit.

Midway then filed a suit against Hartford. Midway contended that Hartford breached its duty to defend Hunzinger, and as the assignee of Hunzinger's rights

28

in this action, Midway argued it was entitled to the $700,000 judgment against Hartford. Midway moved the court for summary judgment. Hartford followed with its own motion for summary judgment. The trial court granted Hartford's motion. Midway appeals.

## I. BREACH OF DUTY TO DEFEND THE INSURED

Midway's principal contention is that it is entitled to summary judgment because Hartford breached its contractual duty to defend[1] Hunzinger and therefore is now liable for the judgment entered against Hunzinger. Supporting this allegation that a breach has occurred, Midway argues that the coverage issue is "fairly debatable" so Hartford was required to provide a defense and that Hartford failed to follow the appropriate options if it contested this coverage.

This requires us to evaluate whether the grant of summary judgment to Hartford was appropriate. We review a motion for summary judgment applying the same methodology as the trial court. *See M & I First Nat'l Bank v. Episcopal Homes Management, Inc.,* 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995). Here, both parties filed motions for summary judgment where they asserted there were no material issues of fact. Therefore, we will only address whether the moving party is entitled to judgment as a matter of law. *See id.* at 497, 536 N.W.2d at 182.

---

[1] For a thorough discussion of an insurance company's contractual duties of indemnification and defense, see *Elliott v. Donahue,* 169 Wis. 2d 310, 320–21, 485 N.W.2d 403, 407–08 (1992).

The pivotal issue in this case is whether Hunzinger's insurance policy with Hartford covered Midway's claims. If so, then Hartford breached the contract by not defending Hunzinger. Determining whether an insurer has breached a contractual provision of an insurance policy is a question of law. *See Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 833, 501 N.W.2d 1, 5 (1993). We will review this question of law independently of the trial court. *See United Capitol Ins. Co. v. Bartolotta's Fireworks Co.,* 200 Wis. 2d 284, 290, 546 N.W.2d 198, 200 (Ct. App. 1996).

## *A. Hartford's Policy*

The insurer's duty to defend is triggered by "the allegations within the four corners of the complaint." *Radke v. Fireman's Fund Ins. Co.,* 217 Wis. 2d 39, 43, 577 N.W.2d 366, 369 (Ct. App.), *review denied,* 219 Wis. 2d 923, 584 N.W.2d 123 (1998). Therefore, to determine whether Midway's claims against Hunzinger were covered by the Hartford insurance policy, we must apply the language of that insurance policy to the facts presented in Midway's complaint. *See id.* This exercise requires that we construe an insurance policy as it would be understood by a reasonable person in the position of the insured, and it is to be given its common and ordinary meaning. *See Kulekowskis v. Bankers Life & Cas. Co.,* 209 Wis. 2d 324, 329, 563 N.W.2d 533, 535 (Ct. App. 1997). If the terms of the insurance policy are unambiguous, this court will not rewrite the contract but will simply apply the contract as written to the facts of the case. *See Budget Rent-A-Car Sys., Inc. v.*

*Shelby Ins. Group*, 197 Wis. 2d 663, 669, 541 N.W.2d 178, 180 (Ct. App. 1995).

The relevant provisions of Hartford's insurance policy detail its liability as follows:

> The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of . . . *property damage* to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking *damages* on account of such . . . *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent . . . . [Emphasis in original indicating terms that the policy defines.]

According to this language, Hartford is obligated to defend Hunzinger if the allegations in Midway's complaint describe "property damage" caused by an "occurrence." Thus, the policy's key definitions for determining coverage in this case are:

> *"occurrence"* means an accident, including continuous or repeated exposure to conditions, which results in . . . *property damage* neither expected nor intended from the standpoint of the *insured*;
>
> *"property damage"* means (1) physical injury to or destruction of tangible property which occurs during the policy period . . . or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an *occurrence* during the policy period.

Midway argues that its complaint alleging Hunzinger's negligence contains statements fulfilling the policy's definitions for both "property damage" and an "occurrence." Specifically, Midway contends that even if sufficient allegations are not explicitly stated in the

complaint, this court should liberally review the complaint to find the statements necessary to fulfill these definitions. We will address each definition separately.

We first examine whether the complaint sufficiently alleges an "occurrence." In paragraph 12 of the complaint, Midway details many reasons it believes the construction of the sewer system was negligent. For example, it asserts that the sewer lines were out of pitch; there was inadequate ground support, bedding and fill material; corroded hangers supported the pipes; the hangers were loose, twisted or bent and insufficient in number; and dissimilar metals, not specified in the plans, were installed. Midway argues that the corrosion of the sewer lines was a continuous or repeated exposure to a condition and thus satisfies the policy's definition of "occurrence." It relies upon *Wisconsin Electric Power Co. v. California Union Insurance Co.,* 142 Wis. 2d 673, 419 N.W.2d 255 (Ct. App. 1987), for the proposition that the problem causing the event, rather than manifestation of the damage, is the "occurrence" that triggers coverage under the comprehensive general liability (CGL) policy.

In *Wisconsin Electric,* the electric company (WEPCO) installed a power supply to a dairy farm in 1970; almost immediately thereafter, the cows began to exhibit unusual behavior that was detrimental to their health and the farm's profits. *See id.* at 675–76, 419 N.W.2d at 256. The problems with the cows ended in 1982 when the power system was altered. *See id.* at 676, 419 N.W.2d at 256. WEPCO agreed to settle the subsequent suit and then made a demand for indemnification upon the eight insurers that issued policies between 1970 and 1982. *See id.* California Union refused to pay WEPCO indemnification arguing that

the "occurrence giving rise to liability occurred in 1970 when WEPCO installed the faulty power supply system." *Id.* at 679, 419 N.W.2d at 257. In affirming the grant of summary judgment to WEPCO, we held that "as long as there is harmful exposure to dangerous conditions, the occurrence is continuing." *Id.* at 681, 419 N.W.2d at 258.

In both the Hartford policy and the policy considered in *Wisconsin Electric*, an "occurrence" is an accident resulting in property damage. Despite sharing the same definition of "occurrence," *Wisconsin Electric* is of limited help to Midway. Policy language in *Wisconsin Electric* limited the insurer's indemnification obligation "only to occurrences and or accidents which happen during the period of this insurance." *Id.* at 679, 419 N.W.2d at 257. The Hartford policy does not have a blanket provision that coverage is available if the "occurrence" happens during the term of the policy; rather coverage is predicated on the type of property damage suffered. If the damage is to tangible property, Hartford's obligation to provide coverage is not triggered by the date of the "occurrence," but rather, under the policy language, coverage is triggered if the damage or destruction occurs "during the policy period." However, if the claim is for the *loss of use* of tangible property, Hartford is obligated to provide coverage if the loss "is caused by an occurrence during the policy period." *Western Cas. & Sur. Co. v. Budrus,* 112 Wis. 2d 348, 352, 332 N.W.2d 837, 839 (Ct. App. 1983).

Midway contends that its complaint contains allegations to fulfill both definitions for "property damage." For the first definition, "physical injury to or destruction of tangible property which occurs during the policy period," Midway asserts that the complaint alleges a

33

physical injury to the sewer system. Hartford provided insurance coverage for Hunzinger from February 1, 1979, to February 1, 1982, which includes the time during which the Midway complex was constructed. In its complaint, Midway states it "discovered a problem with the underground sewer system" in November 1992. Even if we were to conclude that this "problem" sufficiently describes a physical injury, it would obviously fall well outside the policy coverage period. In order to trigger coverage for the loss or destruction of tangible personal property, the policy unambiguously states that physical injury to or the destruction of tangible property *must occur during the policy period.* Our review of the complaint reveals no such allegations. We conclude that there was nothing within the four corners of the complaint that triggered Hartford's duty to defend Hunzinger against allegations that its negligence caused "physical injury to or destruction" of Midway's "tangible property during the policy period."

Regarding the second definition of "property damage," Midway again argues that it sufficiently pled the definition's elements. The definition requires a "loss of use of tangible property . . . provided such loss of use is caused by an *occurrence* during the policy period."

Midway claims that a "loss of use of tangible property" was pled when it stated that it had suffered damages and was seeking all incidental and consequential damages as determined by the trier of fact. As support, it maintains that under the liberal terms of Wisconsin's "notice pleading" requirements, it was not required to allege damages with specificity.

Midway is correct that Wisconsin adheres to a "notice-pleading" philosophy. *See Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 684, 271 N.W.2d 368,

373 (1978). Yet, if "notice pleading" is to have any efficacy at all, the complaint must give the defendant fair notice of not only the plaintiff's claim but "the grounds upon which it rests" as well. *See Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 403, 497 N.W.2d 756, 765 (Ct. App. 1993). "[I]t is not enough to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some basis for recovery." *Id.* at 403–04, 497 N.W.2d at 765 (quoted source omitted). The objective of viewing a complaint in a liberal light cannot be used by a party to supply the missing or forgotten elements needed to trigger a particular insurance policy's coverage. *See Wilson v. Continental Ins. Cos.*, 87 Wis. 2d 310, 319, 274 N.W.2d 679, 684 (1979).

In order to constitute a cause of action for negligence, there must exist: "(1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 293, 507 N.W.2d 136, 140 (Ct. App. 1993) (quoted source omitted). Midway properly pled the first three elements; however, it failed to plead what actual loss or damage it suffered as a result of Hunzinger's breach of its duty. It is not sufficient to plead that "as a result of the negligence of Hunzinger, Midway has suffered damages in an amount to be determined by the trier of fact." Similarly, a demand in the ad damnum clause for "incidental and consequential damages suffered as a result of Hunzinger's negligence" is unsatisfactory because the ad damnum clause is not a

substantive part of the complaint, *see John v. John,* 153 Wis. 2d 343, 367, 450 N.W.2d 795, 806 (Ct. App. 1989); it is nothing more than an "asking price," *see Affett v. Milwaukee & Suburban Transp. Corp.,* 11 Wis. 2d 604, 614, 106 N.W.2d 274, 280 (1960).

Midway asks this court to hold that insurers must speculate beyond the written words of the complaint and imagine what kinds of claims for damages the plaintiffs are actually making. In its brief, Midway states that:

> Among the types of damages which Midway *could have sought* in the underlying litigation ... are: cost of repair and replacement; diminution in value of property; loss of profits or loss of use of property during the period of repair; the cost of repairing or replacing other personal property damaged by failed sewer system; losses of or loss of use of personal property either at replacement cost or fair market value. [Emphasis added.]

Insurers are not mind readers; they are not able to determine all the potential issues that a plaintiff *could have sought* for every complaint filed against them.[2]

---

[2] Midway's speculation exceeds Hartford's liability under the comprehensive general liability (CGL) policies issued to Hunzinger. As we recently held, coverage under CGL policies "exists for tort damages but not for economic loss resulting from contractual liability." *Jacob v. Russo Builders,* No. 97–3736 slip op. at 4 (Wis. Ct. App. Jan. 13, 1999, ordered published Feb. 23, 1999). Costs incurred in accessing, replacing and repairing Hunzinger's product, the sewer system, would be an economic loss to Midway based on Hunzinger's contractual liability and is not covered under the Hartford CGL policy. *See id.* On the other hand, there is the right to recover economic losses when Hunzinger's defective work inflicts physical damage to other tangible property or the loss of use of other tangible property. *See id.* In

■

We determine that Midway failed to plead with sufficient specificity a "loss of use of tangible property." Accordingly, there was nothing pled within the four corners of Midway's complaint that would trigger Hartford's duty to defend Hunzinger against allegations that its negligence caused the "loss of use" of Midway's "tangible property which has not been physically injured or destroyed."

## B. An Insurer's Options if it Contests Coverage

Midway next argues that Hartford breached its duty to defend Hunzinger because it did not seek a judicial resolution of whether the policy covered the allegations in Midway's complaint. Relying on *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), Midway makes the following contention: "In those cases where the insurer did not fully resolve the issue of coverage before the trial on liability, the insurer was found to have breached its duty to defend even when it was ultimately found that there was no coverage under the policy at issue."

Midway's argument need not detain us long. In *Radke*, we wrote that "an insurance company that 'declines to defend does so at [its] peril,' it is not liable to its insured unless there is, in fact, coverage under the policy or coverage is determined to be fairly 'debatable.' " *Radke*, 217 Wis. 2d at 44, 577 N.W.2d at 369 (quoted sources omitted). Here, coverage is not even

cases where there is a failure of the defendant's product, the question always is one of determining which categories of damages are covered under the insurance policy. Midway's failure to categorize and plead its damages is a prime example of why a plaintiff must plead the actual loss or damage caused by the defendant's negligence in order to state a cause of action.

fairly debatable because Midway failed to allege "injury to or destruction of tangible personal property" during the term of the policies, and it failed to categorize and plead the "loss of use of tangible property" which had not been physically damaged or destroyed. Hartford was in no peril when it declined to defend Hunzinger because within the four corners of the complaint there was nothing to alert Hartford that its contractual obligation to defend Hunzinger had been triggered.[3]

## II. Issue Preclusion

Additionally, Midway argues that the doctrine of issue preclusion prevents Hartford from contesting coverage because coverage has already been determined to exist against another one of Hunzinger's other insurance carriers, Aetna. We disagree.

"Issue preclusion forecloses relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in a prior action and reduced to judgment." *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232, 234 (Ct.

---

[3] Likewise, we can summarily reject Midway's argument that if the insured believes the coverage to be debatable, the insurer is obligated to defend the insured. "[A]n insurance company that declines to defend [an insured] . . . is not liable to [that] insured unless there is, in fact, coverage under the policy or coverage is determined to be 'fairly debatable.' " *Production Stamping Corp. v. Maryland Cas. Co.*, 199 Wis. 2d 322, 327, 544 N.W.2d 584, 586 (Ct. App. 1996) (quoted sources omitted; citations omitted). Whatever the insured might have believed when Hartford rejected Hunzinger's tender, we have determined that not only is there no coverage, but also tnat such coverage is not even fairly debatable.

App. 1996). Midway relies on the following facts to assert issue preclusion should be applied in this case: Aetna, which also provided CGL insurance to Hunzinger, disputed whether its policy covered the claims asserted by Midway. Unlike Hartford, Aetna followed the court's procedures to seek a judicial determination on the coverage issue. Accordingly, Aetna intervened in Midway's action against Hunzinger and moved the court for summary judgment. In its motion, Aetna requested the court to rule as a matter of law that its policy did not cover the allegation against Hunzinger in Midway's complaint. In denying Aetna's motion, the court held that coverage was "fairly debatable" and, therefore, a duty to defend existed until coverage was ultimately decided. Subsequently, Aetna settled with Midway.

Midway now attempts to use the court's "fairly debatable" coverage determination against Hartford. It argues that because the policies are basically the same, then a determination regarding one would have the same outcome when applied to the same complaint. Midway's argument fails for several reasons. First, the language of the Hartford policy is markedly different than the language of the Aetna policy.[4]

---

[4] Under the terms of the Aetna policy, coverage is available if "property damage" occurs during the policy period. Hartford's policy has a hybrid—there is coverage if tangible property is physically injured or destroyed during the policy period, but coverage for the loss of use of tangible property is provided if caused by an "occurrence" during the policy period. Further, Aetna deems the loss of use of tangible property that is not physically injured must occur at the time of the occurrence that caused it. On the other hand, Hartford's policy does not include such a provision. The language of the business risk exclusions of the two policies is also different. For example, the Aetna busi-

The marked difference in policy language, along with elementary principles of insurance policy interpretation, lead to the conclusion that the issues of law litigated in Aetna's attempt to avoid defending Hunzinger are not the same issues of law litigated in this case. We cannot hold that the trial court's interpretation of Aetna's policy precludes Hartford from denying a duty to defend or cover. Two contract interpretation principles require this result. First, the goal of interpretation of an insurance policy is to carry out the intention of the parties. *See General Cas. Co. v. Hills*, 209 Wis. 2d 167, 175, 561 N.W.2d 718, 722 (1997). Second, we restrict our interpretation of coverage under the various policies to the language of the individual insurance contracts. *See Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 736, 351 N.W.2d 156, 164 (1984). Because the policy language in each is different, it is reasonable to infer that the parties' intention in negotiating the insurance coverage was different. Therefore, the trial court's determination that Aetna had a duty of coverage is not relevant to whether Hartford has a duty of coverage.

Issue preclusion is also not available because Hartford raised a coverage defense to the underlying complaint—Midway failed to allege damages that fell within the definition of "property damage." There is nothing in the record to establish that Aetna raised the same coverage defense. Midway cannot use issue pre-

---

ness risk exclusion contains an exception for work performed on behalf of the named insured by subcontractors; Hartford's policy does not have such an exception. Aetna's policy has an exception for real estate in the definition of the "insured's product," while Hartford does not include that exception.

▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆

clusion offensively when the issue of failure to allege property damage was not litigated during Aetna's failed attempt to be relieved of its duty to defend. On this record, we hold that there were no issues necessary to the outcome of Hartford's attempt to avoid its duty to defend that were actually litigated and determined in that action; therefore, issue preclusion is not available to Midway. *See Michelle T. v. Crozier*, 173 Wis. 2d 681, 694 n.13, 495 N.W.2d 327, 333 (1993).

### CONCLUSION

In summary, we conclude that Midway failed to properly plead negligence because it did not allege actual loss or damage that constituted "property damage." Because an insured's duty to defend is determined within the four corners of the complaint, there was no coverage in fact, and coverage was not "fairly debatable"; therefore, Hartford did not breach its duty to defend Hunzinger. Midway cannot use the trial court's determination that Aetna had a duty to defend to preclude Hartford from contesting its duty to defend because the issues of law decided against Aetna are not the same issues of law raised by Hartford.

*By the Court.*—Judgment affirmed.