Gregory A. LIEBOVICH, Plaintiff-Appellant,

v.

MINNESOTA INSURANCE COMPANY
and American International Insurance Company,
Defendants-Respondents.†

Court of Appeals

*No. 2006AP405. Submitted on briefs November 16, 2006.
—Decided January 24, 2007.*

2007 WI App 28

(Also reported in 728 N.W.2d 357.)

† Petition to review granted 4/17/07.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jon P. Axelrod, Jacob P. Westerhof* and *Megan A. Senatori* of *DeWitt Ross & Stevens S.C.* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael A. Mesirow* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. We are here required to construe a homeowner's insurance policy. What makes this case unusual is that the policy we construe is no ordinary policy. Rather, as the summary judgment record shows, this AIG[1] Private Client Group policy is an "innovative insurance" product designed to "enhance protection and minimize threats to the personal wealth of high net worth individuals." AIG touted the product as one "exclusively for high net worth individuals . . . crafted to ensure broad coverage." Indeed, the policy holder here, the plaintiff, Gregory Liebovich, paid a premium of $4751 for this special coverage between May 1, 2002

---

[1] Both named defendants are subsidiaries of American International Group, Inc.

and May 1, 2003, and a much higher premium of $7591 for coverage between May 1, 2003 and May 1, 2004. Did he get what he paid for? Well, one example of broad coverage is that Liebovich was covered for an "occurrence"—defined as an "offense" in addition to the usual definition of "accident." Additionally, he was covered for personal injury arising out of "wrongful entry or eviction" without the limiting language found in some other policies. As we shall see, these examples illustrate why we must reverse, in part, the grant of summary judgment in this case.

¶ 2. This case began when Liebovich was sued by two contiguous neighbors on Geneva Lake. They claimed that he had built his house in violation of a setback restriction. Liebovich had homeowner's insurance policies with AIG, and tendered the defense to the company. AIG refused to defend, telling Liebovich that his policy did not cover the liability claimed in the suit. So, Liebovich had to hire counsel and defend the suit on his own. Eventually, the court ordered that he pay his two neighbors $10,000 in damages plus statutory costs and disbursements. He then sued AIG, claiming that it had breached its duty to defend and had denied coverage in bad faith. The circuit court granted summary judgment to AIG, holding that it had no duty to defend Liebovich and that the policies did not cover Liebovich's damages. We will now discuss the reasons for our reversal, beginning with a restatement of the pertinent law.

¶ 3. Liability insurance policies impose two duties on the insurer: the duty to indemnify and the duty to defend. *Gross v. Lloyds of London Ins. Co.*, 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984). The duty to defend is broader than the duty to indemnify because it is predicated on allegations in a complaint that, if true, would

give rise to coverage. *Elliott v. Donahue,* 169 Wis. 2d 310, 320–21, 485 N.W.2d 403 (1992). Any doubt as to whether a duty to defend exists must be resolved in favor of the insured. *Id.* at 321. If it is "fairly debatable" that coverage exists under the facts in the complaint, then there is a duty to defend unless and until coverage is resolved in favor of the insurer. *See Baumann v. Elliott,* 2005 WI App 186, ¶¶ 8–9, 286 Wis. 2d 667, 704 N.W.2d 361.

¶ 4. An insurer believing that its policy does not indemnify against a particular claim has several options for preserving its rights without violating its duty to defend. *See id.,* ¶ 8. It may seek a judicial resolution of coverage before the underlying claim is tried, or it may defend its insured under a reservation of rights. *See id.* The insurer may, on the other hand, simply refuse to assist and leave the insured to his or her own defense. If the insurer is correct that it owes no duty to defend, then it suffers no negative consequences of this action. *See Menasha Corp. v. Lumbermens Mut. Cas. Co.,* 361 F. Supp. 2d 887, 891–92 (E.D. Wis. 2005). However, the insurer should be very wary of taking this route, because if it is later found that the insurer *did* have a duty to defend, the breach of that duty estops the insurer from contesting coverage in the underlying action. *Prof'l Office Bldgs., Inc. v. Royal Indem. Co.,* 145 Wis. 2d 573, 586, 427 N.W.2d 427 (Ct. App. 1988). This means that it must pay, in addition to the insured's cost to defend the underlying action, any damages awarded in that action. *Newhouse v. Citizens Sec. Mut. Ins. Co.,* 176 Wis. 2d 824, 838, 501 N.W.2d 1 (1993). The insurer must also pay the insured's attorney fees in successfully establishing coverage.[2] *Donahue,* 169 Wis. 2d at 314.

---

[2] The circuit court, in its oral ruling, found fault with this system. Liebovich argues that the court based its denial of

¶ 5. Whether an insurer had a duty to defend is a question of law we review de novo. *Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106 (Ct. App. 1992). Wisconsin courts apply the "four corners" test in determining whether a duty to defend exists. *See Newhouse*, 176 Wis. 2d at 835. We examine two documents: the complaint and the insurance policy. We construe the terms of an insurance policy as they would be understood by a reasonable person in the insured's position. *Donahue*, 169 Wis. 2d at 321–22. If there is any doubt as to whether the complaint states facts that would give rise to liability under the policy, then the duty to defend exists. *See id.* at 321. No evidence outside of the complaint and the policy is considered. *Prof'l Office Bldgs.*, 145 Wis. 2d at 582.

---

defense and coverage on his failure to implead AIG and that we should reverse on this basis. Examining the court's decision, despite its comments, we do not believe that it refused to follow the well-established law. However, we want to make clear that we disagree with the circuit court about the merits of the Wisconsin system. The rule does not, as the circuit court seemed to think, deny the insurer the opportunity to make its case that it has no duty to defend or indemnify; the insurer may always, if it chooses, intervene. Rather, where the insurer breaches its duty to defend, the system seeks to put the insured in the same position he or she would have been had the insurer performed its duties; one of the bedrock principles of contract law. Since insurance companies are sophisticated repeat players in the legal system, it makes sense to place the onus of deciding whether to participate in a case upon them, rather than upon the insured. Further, an individual who has paid insurance premiums is *entitled* to a defense; that is what the premiums are for. It makes no sense to require, as a matter of course, that insured individuals sue their insurers to get what they paid for.

¶ 6. Liebovich's policies state that AIG will "pay . . . damages an insured person is legally obligated to pay for personal injury . . . caused by an occurrence covered by this policy . . . unless stated otherwise or an exclusion applies." The policy defines "personal injury" as "injury, including bodily or mental harm arising out of any of the following acts: ... [w]rongful entry or eviction." "Occurrence" is defined as either "[a] loss or an accident" or, importantly in this case, "[a]n offense, including a series of related offenses, committed during the Policy Period that results in personal injury." However, the policy excludes coverage for "acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury."

¶ 7. Boiled down to its essence, the policy thus indemnifies Liebovich for (1) damages he is legally obligated to pay (2) for a personal injury[3] (which is an injury, including bodily or mental harm arising out of wrongful entry) (3) caused by an accident or offense (4) so long as Liebovich did not act with the intent to cause property damage or personal injury (or should not have reasonably expected property damage or personal injury to result). This means that if it is fairly debatable that the complaint in this case stated facts that could give rise to liability for Liebovich meeting each of these elements, AIG had a duty to defend. We will consider each in turn.

¶ 8. The great bulk of the allegations in the body of the complaint go to establishing that the 125–foot setback covenant exists in the relevant deeds. Then

---

[3] Though "property damage" would seem to be at least as applicable to this case as "personal injury," Liebovich has not argued that he was entitled to a defense under the "property damage" clause in his policy.

there are four more: that Liebovich built his house in violation of the setback; that he had actual and constructive knowledge of the restriction when he did it; that the violation was "intentional, in willful disregard of the rights of" his neighbors; and that the neighbors "have no other adequate, specific legal remedy available" because Liebovich has refused to cure the problem, and that because of this they are "aggrieved." Also, under one of the causes of action, the complaint states that Liebovich's house "has interfered with the interests of [the neighbors] in and to their neighboring real property." In the first ad damnum clause, the complaint requests, inter alia, an injunction preventing Liebovich from "maintaining the existing single-family dwelling on the . . . property," and a writ of mandamus directing Liebovich to raze and remove the portion of his house in violation. In the second, it requests further injunctions "and, to the extent not inconsistent with Plaintiffs' request for injunctive relief, for damages in an amount to be determined by the Court or a jury."

¶ 9. AIG first argues that the complaint does not state a claim for damages at all, but requests only equitable relief. AIG notes that the only request for damages comes in the ad damnum clause, which we have in the past refused to consider in applying the four corners test.[4] *See Midway Motor Lodge of Brookfield v. Hartford Ins. Group*, 226 Wis. 2d 23, 35–36, 593 N.W.2d 852 (Ct. App. 1999); *but see Baumann*, 286 Wis. 2d 667, ¶¶ 17–18. However, our supreme court has held that in deciding whether coverage exists, it is not enough to rely on the labels "equitable relief" and "damages."

[4] As an aside, we note that this argument fails even on its own terms, since the requests for equitable relief that AIG embraces *also* come in the ad damnum clauses.

340

*Johnson Controls, Inc. v. Employers Ins. of Wausau,*
2003 WI 108, ¶ 44, 264 Wis. 2d 60, 665 N.W.2d 257
(rejecting a "strict dichotomy" between the two). In
*Johnson Controls,* the court explained that money
spent to comply with an equitable remedy such as an
injunction can give rise to coverage where the injunc-
tion is remedial in nature, i.e., provides compensation
for past wrongs, rather than looking simply to the
future. *Id.,* ¶¶ 42–44, 48. Here, the razing of part of
Liebovich's house would, at least in part, be a remedy
for his past action of building the house where he was
not permitted to do so.

¶ 10. Further, AIG's dependence on *Midway* is
misplaced because it is the facts pled in the complaint,
rather than the legal theories espoused, that determine
the duty to defend. *See Curtis-Universal, Inc. v.
Sheboygan Emergency Med. Servs., Inc.,* 43 F.3d 1119,
1122 (7th Cir. 1994). In *Midway,* the underlying com-
plaint was for an improperly installed sewer system.
*Midway,* 226 Wis. 2d at 27. The body of the complaint
failed to allege that the faulty sewer caused damage to
tangible property, which was what the policy covered,
during the time period that the policy covered. *Id.* at
33–34. We refused to resort to the ad damnum clause to
supply the *facts* that would give rise to coverage because
the ad damnum clause "is not a substantive part of the
complaint" and is instead "nothing more than an 'asking
price.' " *Id.* at 35–36 (citations omitted). It was not that
the complaint failed to ask for *damages,* but that it
failed to say that anything had been *damaged,* that
foreclosed any duty to defend. Indeed, if AIG's reading
of *Midway* were correct, there could never be a duty to
defend in this state; for where but the ad damnum
clause would a court look to see whether damages were

requested?[5] Here, the complaint is clear as to what Liebovich allegedly did wrong and how it harmed his neighbors. The question we must answer is not whether the complaint asks for damages as relief, but whether the facts pled could give rise to damages falling within the policy.

¶ 11. AIG claims that they do not; that the complaint did not allege a "personal injury" as defined by the policy. We disagree. Among the covered "events" that can give rise to injury under the policy is "wrongful entry or eviction." The term "wrongful entry," though frequently used in insurance policies, is exceedingly ill-defined. *See Scottish Guarantee Ins. Co. v. Dyer*, 92–C–012–C, 1992 WL 601889 (W.D. Wis. Nov. 27, 1992), *aff'd*, 19 F.3d 307 (7th Cir. 1994). In *Dyer*, the court noted that it appears to be a rough equivalent of trespassing. *Id.* at *3; *see also id.* at *15 (appendix listing state court uses of "wrongful entry"). Given this, it is at least fairly debatable that Liebovich's action of putting his home in a location that his neighbors had the right to keep it out of constituted a "wrongful entry" into his neighbors' interests in the land.[6] The complaint

---

[5] *Clemons v. State Farm Fire and Casualty Co.*, 879 S.W.2d 385 (Tex. App. 1994), a Texas case cited by AIG, is not to the contrary. There, the court rejected the claim that a pro forma request for "other and further relief" in the ad damnum clause triggered coverage where there was no statement of property damage or bodily injury within the complaint. *Id.* at 392–93.

[6] AIG cites two cases that it claims require physical entry by the defendant onto the plaintiff's property for a wrongful entry to occur and trigger coverage. Neither one of the cases supports this claim, nor do they deal with a fact situation like this one. In *Production Stamping Corp. v. Maryland Casualty Co.*, 199 Wis. 2d 322, 330, 544 N.W.2d 584 (Ct. App. 1996), we denied

342

also alleges that this wrong by Liebovich has "aggrieved" his neighbors and interfered with their interests in property. This satisfies the requirement that the wrongful entry cause a "personal injury," since that term includes "mental harm." We therefore hold that the complaint alleged a personal injury under the policy.

¶ 12. AIG next argues that there was no "occurrence" under the policy. An "occurrence" is defined as either a "loss or accident" or an "offense." AIG argues that Liebovich's building of the house is not reasonably described as an "accident." That may be so, and such an argument would likely win the day for AIG were this a standard policy. But AIG makes no argument that Liebovich's conduct does not fall under the term "offense." Instead, it argues that even an offense is not an "occurrence" under the policy if it does not result in personal injury. AIG's argument on this point thus reduces to a restatement of the claim that we have earlier rejected. Moreover, we note again that this was a "Private Client Group" insurance contract. While we do not know for certain whether AIG's more standard homeowner's insurance policies cover losses resulting from an "offense" as well as an "accident," we do know that coverage for an "offense" or an "accident" is much broader than coverage only for an "accident"—the boiler

coverage for groundwater contamination, and though we stated that it was not a case of wrongful entry, we did so because the contrary conclusion would have rendered meaningless an absolute pollution exclusion in the policy, "a result that the parties could not have possibly intended." In *Robert E. Lee & Associates, Inc. v. Peters*, 206 Wis. 2d 509, 524, 557 N.W.2d 457 (Ct. App 1996), we rejected coverage for groundwater contamination under a much narrower and more specific policy term: "wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies."

plate language existing in most standard policies. If Liebovich's conduct was not an offense, AIG has failed to inform us why this is so.

¶ 13. AIG finally argues that it did not have a duty to defend Liebovich because his policy contains an exclusion for "acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, property damage or personal injury." The complaint alleges that Liebovich "had both actual and constructive knowledge of the ... setback restriction by virtue of the express language in the Liebovich Deed[,] through oral conversations, and through written communications from third parties" and that his violation of the setback restrictions was "intentional, in willful disregard of the rights of [the neighbors]." Thus, AIG argues, coverage is excluded because the complaint alleges intentional harm.

¶ 14. Liebovich claims in response that a complaint asserting intentional conduct can give rise to coverage where the insured could ultimately be found liable even without a showing of intent. He cites two cases from the Seventh Circuit in support of this claim, but after close scrutiny of these cases, we are satisfied that they do not stand for this proposition. Both say that where the facts laid out in a complaint could give rise to multiple causes of action, one of which may be covered by the policy, the insurer must defend the entire suit. *Curtis-Universal*, 43 F.3d at 1122; *United States v. Security Management Co.*, 96 F.3d 260, 268 (7th Cir. 1996) (finding duty to defend where one of several claims did not allege intentional act). They do *not* say that where a complaint alleges *only* intentionally harmful conduct by the insured, the fact that the conduct could nonetheless give rise to liability even if it were merely negligent defeats an intentional act exclusion.

344

¶ 15. Nevertheless, we agree with Liebovich that, despite the allegations in the complaint of "actual and constructive knowledge" of the setback and "willful disregard of the rights" of his neighbors, the complaint viewed as a whole suggests to the reasonable reader that Liebovich did not intentionally set out to harm his neighbors. Under Wisconsin law, an intentional act restriction only excludes coverage when the insured acts intentionally *and intends that some harm follow* from his or her actions. *Ludwig v. Dulian*, 217 Wis. 2d 782, 788, 579 N.W.2d 795 (Ct. App. 1998). We understand that this does not necessarily require "subjective" intent to harm on the part of the insured. The law is that "objective" intent can be inferred where the insured acts intentionally and the act is substantially certain to produce injury. *Id*. We also understand that the neighbors claimed they notified Liebovich of the restriction and he built his house anyway. As far as the complaint reveals, this is their basis for claiming that he willfully disregarded their rights.

¶ 16. However, our charge—and that of insurers—is to liberally construe the allegations in the complaint in favor of the insured, and draw reasonable inferences from them, to determine whether the potential for coverage exists. *See Doyle v. Engelke*, 219 Wis. 2d 277, 284, 580 N.W.2d 245 (1998). Here, it is a reasonable inference that when Liebovich's neighbors accuse him of "willful disregard" of their rights, they mean that he refused to conform his conduct to what *they* thought was legal and illegal; not that he knew he was building an illegal house and just did not care.

¶ 17. We therefore hold that AIG had a duty to defend Liebovich when it was presented with his neigh-

bors' complaint. It could have sought a judicial determination of its responsibilities, given the complexity of the coverage issues presented here, but decided instead to abandon Liebovich to his own defense. Therefore it must now compensate him for the reasonable cost of that defense, along with the judgment against him and his expenses in successfully establishing coverage. We note that the underlying action in this case continues, having been appealed (by the neighbors, with a cross-appeal by Liebovich) to this court. This means that the cost of Liebovich's defense may even now be accumulating (the damages may of course also change as a result of the appeal). On remand, we direct the circuit court to calculate the damages (with interest since the judgment), costs, and fees owed by AIG at the present time, and retain jurisdiction for later adjustments as they become necessary. We point out also that by breaching the duty to defend, AIG has given up its right to control Liebovich's defense. *See Grube*, 173 Wis. 2d at 76. However, there is nothing preventing the parties from reaching a mutually acceptable agreement on the future conduct of this case.

¶ 18. Liebovich also asks this court to reinstate his original bad-faith denial of coverage claim against AIG, since its dismissal was predicated on the circuit court's finding that there was no coverage of the underlying claims. We decline to do so. The standard for bad-faith claims is the same "fairly debatable" standard as that for duty to defend, but it is the insurer, rather than the insured, that gets the benefit of the doubt. *See Trinity Evangelical Lutheran Church and School-Freistadt v. Tower Ins. Co.*, 2003 WI 46, ¶ 33, 261 Wis. 2d 333, 661 N.W.2d 789 (to show bad faith, insured must show absence of a "reasonable basis" for denying

claim; "reasonable basis" does not exist where claim not "fairly debatable"). We have held that, since it was debatable whether the policy covered Liebovich for the acts alleged in the complaint, AIG owed a duty to defend him—at least until coverage was decided—and that violating that duty means that AIG may no longer contest coverage. But this same analysis precludes a bad faith action by Liebovich against AIG. To have a valid bad faith claim, Liebovich had to convince us that coverage by AIG was not even debatable. The short answer is: coverage was debatable—which defeats AIG's claim that there was no duty to defend and also defeats Liebovich's claim that coverage was self-evident.

¶ 19. No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.