Edward BAUMANN and
Elite Protection Specialists, LLC, Plaintiffs,

v.

Matthew F. ELLIOTT and Security Arts
Corporation, Defendants-Appellants,

CINCINNATI INSURANCE COMPANY,
Intervenor-Respondent.

Court of Appeals

*No. 2004AP2177. Submitted on briefs May 16, 2005.
—Decided July 20, 2005.*

2005 WI App 186

(Also reported in 704 N.W.2d 361.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joseph J. Voelkner* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Stephanie L. Dykeman* of *Litchfield Cavo* of Brookfield.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. This case comes to us on summary judgment. The court found that an insurer had no

672

duty to indemnify its insured or to provide him with a defense in an action for defamation of character because the policy required an "occurrence" to trigger coverage for "personal injury." The defendant claims the court should have limited its duty-to-defend analysis to the "four corners" of the plaintiff's complaint and that even if the policy does not cover the allegations in the complaint, we should read coverage into his policy because coverage limited to "accidental" defamation is illusory. We hold that a court need not confine itself to the "four corners" of a plaintiff's complaint when deciding whether an insurance policy requires an insurer to defend the policyholder where it has already determined that the insurer has no duty to indemnify. The duty to defend exists only where coverage remains fairly debatable, and no debate remains once the court has resolved the coverage issue. We further hold that the "four corners" analysis may look to the ad damnum clause for clarification of the factual allegations where the allegations are otherwise sufficient to state a claim. Finally, we conclude that "negligent defamation" is not a contradiction in terms and Wisconsin law recognizes the possibility of recovery by a plaintiff even where the defendant does not deliberately and intentionally defame the plaintiff. For these reasons, we affirm.

¶ 2. Edward Baumann, the Chief of Police of the Village of Pewaukee,[1] and his security firm, Elite Protection Specialists, LLC (EPS), filed a complaint on December 23, 2003, against Matthew F. Elliott and Security Arts Corporation (SAC), Elliott's competing business. The complaint also named Elliott's insurer,

---

[1] Although the briefs and the record represent that Baumann is the Chief of Police of the City of Pewaukee, we judicially notice that he is in fact the Chief of Police of the Village of Pewaukee. We therefore refer to him as the latter.

673

later identified as Cincinnati Insurance Company (Cincinnati). The complaint stated three causes of action against the defendants: (1) tortious interference with contracts and prospective contracts, (2) defamation, and (3) threats to injure or accuse of a crime.

¶ 3. The pertinent allegations in the complaint read:

## JURISDICTION AND VENUE

. . . .

10. [T]he acts committed by Defendant, Elliott and SAC were published in new[s] media primarily circulated in Waukesha County . . . .

## FIRST CAUSE OF ACTION:

## TORTIOUS INTERFERENCE

11. Paragraphs 1 th[r]ough 10 are hereby incorporated by reference as if set forth at length.

. . . .

14. That EPS entered into contracts and had prospective contracts with various entities to provide security services for special events, including, but not limited to events such as, Summerfest and the Harley-Davidson 100th Anniversary Celebration.

15. The Defendant, Elliott interfered with the said contracts and prospective contracts, by intentionally interfering with the relationship between EPS and their prospective clients. Further, Defendant, Elliott acting as an agent for SAC intentionally interfered with the relationship between EPS and their prospective clients.

674

16. That the intentional interference by Elliott and SAC resulted in EPS suffering damages for unrealized revenues and profits, along with damages to its reputation and marketability in the marketplace.

. . . .

## SECOND CAUSE OF ACTION:

## DEFAMATION

19. Paragraphs 1 th[r]ough 18 are hereby incorporated by reference as if set forth at length[.]

20. That Defendants, Elliott and SAC made false, defamatory statements to persons other than the Plaintiff, Baumann, that were not privileged, that directly and proximately harmed Baumann's reputation, thereby deterring third parties for [sic] associating and conducting business with Baumann and EPS.

21. That Defendants, Elliott and SAC made false, defamatory statements to persons other than the Plaintiff, EPS, that were not privileged, that directly and proximately harmed EPS's reputation, thereby deterring third parties for [sic] associating and conducting business with Baumann and EPS.

22. That the Defendants['] false defamatory comments include, but are not limited to, allegations that Plaintiff Baumann abused his public office, as police chief of Pewaukee. That EPS and Baumann personally, were taking cash payments for rendering security services. And that, EPS and Baumann was [sic] having its employees perform their EPS duties in police issued uniforms.

675

. . . .

## THIRD CAUSE OF ACTION[:]

## THREATS TO INJURE OR ACCUSE OF CRIME

25. Paragraphs 1 th[r]ough 24 are hereby incorporated by reference as if set forth at length.

26. That Defendant, Elliott, maliciously threatened and accused Plaintiff, Baumann of a crime and threatened injury to Baumann's profession, intentionally and specifically for his own pecuniary advantage, contrary to Wis. Stat. § 943.30.

. . . .

28. That Defendant, SAC, through its agent, Elliott, maliciously threatened and accused Plaintiff, Baumann of a crime and threatened injury to Baumann's profession, intentionally and specifically for his own pecuniary advantage, contrary to Wis. Stat. § 943.30.

¶ 4. Elliott tendered the defense of the matter to Cincinnati. Cincinnati assigned counsel to defend Elliott but did so under a reservation of rights. Cincinnati's answer to the complaint denied that its policy provided coverage, and Cincinnati subsequently moved for summary judgment.

¶ 5. The motion sought a declaration that Cincinnati had no duty to defend or indemnify Elliott. Cincinnati relied on language in its policy. Coverage E provides for coverage and a duty to defend "[i]f a claim is made or a suit is brought against any 'insured' for damages because of . . . 'personal injury' . . . arising out of an occurrence to which this coverage applies." The policy defines "personal injury" in relevant part as

676

"injury to others arising out of libel, slander, defamation of character." It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . 'personal injury.' " Cincinnati explained that although the complaint alleges defamation, a "personal injury" which the policy covers, it did not allege an "occurrence," which is required in order to trigger personal injury coverage. Occurrences, it asserted, do not include knowing, intentional defamation, as alleged in the complaint.

¶ 6. Elliott did not contest that the complaint failed to allege an occurrence. Instead, he asserted that the coverage was illusory if an occurrence was required to trigger indemnity for personal injury. The circuit court rejected this argument. Accordingly, it granted summary judgment on behalf of Cincinnati, declaring that Cincinnati had no duty to defend the suit or to indemnify Elliott should he incur liability.

¶ 7. Elliott appeals. He first contends that the circuit court improperly relied on evidence outside of the "four corners" of the complaint when it determined that the complaint did not give rise to Cincinnati's duty to defend. He relies on *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992). The supreme court in *Elliott* stated that the duty to defend is "predicated on allegations in a complaint which, if proved, would give rise to recovery under the terms and conditions of the insurance policy." *Id.* at 320–21. This duty exists independent of the merits of the claim, so it makes no difference whether the plaintiff ultimately recovers. *See id.* at 321. It is the nature of the claim that controls. *Kenefick v. Hitchcock*, 187 Wis. 2d 218, 232, 522 N.W.2d 261 (Ct. App. 1994). Any doubts about coverage must be

resolved in favor of the insured. *Elliott*, 169 Wis. 2d at 321. Because our focus is on the complaint, courts refer to this rule as the "four corners" analysis.

¶ 8. We review de novo whether an insurance company has a duty to defend its insured. *Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106 (Ct. App. 1992). We hold that *Elliott* does not control this case. The insurer in *Elliott* refused to provide a defense on the merits pending the outcome of the circuit court's coverage decision, despite the fact that coverage was "fairly debatable," because it unilaterally decided its policy afforded no coverage. *See Elliott*, 169 Wis. 2d at 317–18. *Grube* made clear that an insurer should not make an independent determination of this sort but rather should first submit the issue to the court. *Grube*, 173 Wis. 2d at 75. An insurer may raise the coverage issue in a variety of ways: (1) It may seek a declaratory judgment; (2) it may enter into an agreement with the insured to defend while retaining the right to challenge coverage; (3) similarly, it may afford a defense under a reservation of rights, as Cincinnati did in this action; (4) finally, it may seek a bifurcated trial, in which the court decides the coverage issue in a separate action from the action on the merits of the complaint. *See id.* at 75.

¶ 9. The insurer breaches its duty to defend if it refuses to provide a defense before the court decides the issue of coverage, *Elliott*, 169 Wis. 2d at 318, but the duty to defend ends once the court resolves the coverage issue in favor of the insurer. *See Kenefick*, 187 Wis. 2d at 235 ("[W]here the insurer disputes coverage, its duty to defend continues only 'until the issue of coverage is resolved.' "). Although we recognized that the

678

insurer in *Kenefick* initially had a duty to defend, based on the "four corners" analysis, *see id.* at 232, we emphasized that the duty did not continue past the point when the circuit court decided coverage, *id.* at 235 ("[A]n insurer may be required to furnish a free defense to its insured *prior to the determination of coverage*" (citation omitted.)). In *Kenefick,* the insurer sought a bifurcated trial so that the court could adjudicate coverage prior to the trial on liability and damages. *See Kenefick,* 187 Wis. 2d at 233–35. The circuit court resolved the coverage issue in favor of the insurer on summary judgment. *Id.* at 221–22. We held that the plaintiffs could seek recovery of the expenses they incurred in litigating the liability and damage claims "up to the time those proceedings were stayed pending resolution of the coverage issues." *Id.* at 222.[2]

¶ 10. This result should not come as a surprise, given the purpose of the "four corners" analysis. We employ that test to ensure that insurers do not frustrate the expectations of their insureds by resolving the coverage issue in their own favor while coverage remains fairly debatable. *See Elliott,* 169 Wis. 2d at 322–23. Once the circuit court resolves the question of indemnity in the insurer's favor, however, coverage is no longer open to debate. An insurer need not defend a suit

---

[2] *Kenefick v. Hitchcock,* 187 Wis. 2d 218, 232, 522 N.W.2d 261 (Ct. App. 1994), decisively refutes Elliott's argument that indemnity determinations necessarily must follow a trial on the merits. *Kenefick* specifically mentions a bifurcated *trial* in which the court resolves the issue of coverage *prior* to a trial on the merits. *See id.* at 233–35; *cf. Grube v. Daun,* 173 Wis. 2d 30, 75, 496 N.W.2d 106 (Ct. App. 1992) (insurer may seek a bifurcated trial on the issue of coverage).

in which it has no economic interest. *School Dist. of Shorewood v. Wausau Ins. Cos.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992).

¶ 11. Here, the circuit court resolved the indemnity question in Cincinnati's favor. Based on that ruling, Cincinnati no longer had any economic interest in Baumann's suit against Elliott. The absence of a duty to defend follows from that finding.

¶ 12. Even if we assume that the circuit court should have limited its duty-to-defend analysis to the "four corners" of the complaint, it reached the correct result. Elliott concedes that the "occurrence" prerequisite to personal injury coverage purports to afford coverage only for negligent defamation. No fair reading of this complaint reveals such a claim. Rather, the allegations assert intentional, willful, malicious defamation. In setting forth its second cause of action, defamation, para. 19 of the complaint specifically incorporates the allegations related to its first cause of action, which alleges *intentional* interference with EPS' business relationships. Paragraph 19 is fatal to Elliott's position that the complaint does not allege intent to defame because it makes clear that the first and second causes of action arise from the same set of facts.

¶ 13. Similarly, the third cause of action reincorporates in para. 25 all of the factual allegations relating to the first two claims. This third cause of action alleges that Elliott threatened the plaintiffs' professional reputations and accused them of criminal activity "intentionally and specifically for his own pecuniary advantage." Taken together, the averments in the complaint accuse Elliott of defaming the plaintiffs, by accusing them of illegal behavior, for the specific purpose of realizing a pecuniary advantage. Indeed, we cannot see

how one could interpret them to assert anything other than calculated, willful defamation of the plaintiffs.

¶ 14. The prayer for relief further bolsters our conclusion that the complaint specifically alleges wanton and willful, malicious conduct by Elliott. Paragraph D of that section prays "[f]or a judgment for this Court against Defendants . . . awarding Plaintiffs . . . punitive damages, for the Defendants['] malicious, wanton and willful, defamation of Baumann and EPS."

¶ 15. Elliott protests that we may not consider the prayer for relief because it does not constitute a substantive part of the complaint. He cites our decision in *Midway Motor Lodge of Brookfield v. Hartford Insurance Group*, 226 Wis. 2d 23, 593 N.W.2d 852 (Ct. App. 1999), in support of that proposition. In *Midway*, we reaffirmed that "the ad damnum clause is not a substantive part of the complaint" and "is nothing more than an 'asking price.' " *Id.* at 35–36. In *Midway*, the ad damnum clause demanded "incidental and consequential damages suffered as a result of [the defendant's] negligence." *Id.* at 35. We held that Midway had failed to plead what actual loss or damages it suffered as a result of the defendant's negligence. *Id.*

¶ 16. We reject Elliott's argument. We acknowledge that the purpose of an ad damnum clause is merely to state the plaintiff's "asking price." *See id.* at 35–36; State Bar of Wisconsin, *Wisconsin Civil Litigation Forms Manual*, 2–9 (1999) ("A complaint must contain a prayer for relief, which is a demand for judgment for the relief the plaintiff seeks."). However, we know of no authority in this state that prohibits a court from considering language in the prayer for relief that clarifies allegations stated elsewhere in the complaint.

¶ 17. *Midway* does not definitively resolve that issue. Although the ad damnum clause in that case

arguably alleged that the plaintiff had suffered inciden-
tal and consequential damages, these allegations by
themselves would not have satisfied notice-pleading
requirements. *Compare Midway*, 226 Wis. 2d at 35
(purpose of "notice pleading" to give defendant a fair
idea of what the complaint is about and that some basis
for recovery exists and liberal construction not a tool to
supply missing and forgotten elements), *with id.* at 37
("Midway failed [within the four corners of its com-
plaint] to plead with sufficient specificity a 'loss of use of
tangible property.' "). They were merely conclusory, and
the rest of the complaint contained no allegations that
would support the conclusion that the plaintiff had
suffered incidental and consequential damages.

¶ 18. We note that our "asking price" language in
*Midway* comports with 61A Am. Jur. 2d *Pleading* § 152
(2004). Section 152 explains that although (1) "[a]
prayer for relief is not an allegation in a complaint
which requires an answer, and is not part of the
plaintiffs' cause of action," and (2) the prayer for relief
does not cure an otherwise insufficient pleading, it is
nonetheless a relevant portion of the pleading that "can
be of value to clarify and support the pleading's allega-
tions." *Midway* involved an "otherwise insufficient
pleading" within the meaning of § 152. Here, by con-
trast, the ad damnum clause's characterization of
Elliott's defamation of EPS and Baumann as "malicious,
wanton and willful" is supported by factual allegations
in the body of the complaint. Although the section of
the complaint specifically discussing defamation did not
use magic words like "wanton and willful," "malicious,"
"purposeful," or "intentional," we have already ex-
plained why a fair reading of the complaint as a whole
warrants the conclusion that the plaintiffs accuse El-

liott of intentional defamation. We hold that we may rely on the ad damnum clause to clarify the allegations set forth in the remainder of the complaint.[3]

¶ 19. Elliott argues that even if the complaint does allege only intentional defamation, we should read the policy to cover intentional acts because otherwise the "occurrence" prerequisite to "personal injury" coverage renders coverage for defamation illusory. He contends that defamatory statements can never be accidental because "[d]efamatory statements, in and of themselves, must have an element of malice in order to be actionable." He cites to *Polzin v. Helmbrecht*, 54 Wis. 2d 578, 196 N.W.2d 685 (1972), presumably, relying on the following language:

> [A] finding of malice by the jury obviates any conditional privilege. The finding of malice by the jury "takes the question of conditional privilege out of the case." Inasmuch as malice, either [express][4] or implied, is an essential element of actionable libel in Wisconsin, the

---

[3] Although we need not decide the issue here, we note that some jurisdictions do look to the prayer for relief as a source of substantive allegations, even where the complaint is otherwise insufficient, when the prayer contains substantive allegations that would have been sufficient had they been properly placed elsewhere in the complaint. *See Treat v. Los Angeles Gas & Elec. Corp.*, 213 P. 263 (Cal. Ct. App. 1923) (relying solely on ad damnum clause as source of substantive allegation that deceased son contributed to his parents' support); *cf. Hudson Ave. Drive-In Inc. v. M & L Amusement Corp.*, 223 N.Y.S.2d 344, 346–47 (N.Y. Sup. Ct. 1962) (ordering plaintiff to make more definite an allegation appearing for first time in ad damnum clause but noting that, "While the location of this allegation is not appealing artistically, misplacement is not an unduly grave defect.").

[4] "Express malice" used to be referred to as "actual malice," but when the United States Supreme Court decided *New York*

instruction on a conditional privilege would never be appropriate because if there is no malice there is no cause of action, and if there is malice the privilege does not apply. Thus the question to be determined when there is a conditional privilege is really malice, and that determination was made by the jury.

*Polzin*, 54 Wis. 2d at 584–85 (footnotes omitted).

■■■

¶ 20. Coverage is illusory only when we cannot foresee liability in any imaginable set of circumstances. *See Link v. General Cas. Co. of Wis.*, 185 Wis. 2d 394, 400, 518 N.W.2d 261 (Ct. App. 1994). Whether an insurance policy affords illusory coverage presents a question of law for our independent review. *See Hinrichs v. American Family Mut. Ins. Co.*, 2001 WI App 114, ¶ 14, 244 Wis. 2d 191, 629 N.W.2d 44. Likewise, construing the policy alleged to be illusory presents a legal question that we review de novo. *See Link*, 185 Wis. 2d at 398 (standard of review for interpreting an insurance contract).

■■■

¶ 21. Elliott apparently reads *Polzin*'s assertion that "if there is no malice there is no cause of action," *Polzin*, 54 Wis. 2d at 585, to mean (1) where there is a cause of action, there is malice and (2) where there is

*Times Co. v. Sullivan*, 376 U.S. 254 (1964), it introduced a new concept known as "actual malice." *See id.* at 279–80. This constitutional concept differs from "express malice," *see Polzin v. Helmbrecht*, 54 Wis. 2d 578, 588, 196 N.W.2d 685 (1972) (explaining the difference), although older Wisconsin cases such as *Polzin* sometimes use the term "actual malice" to refer to both "express malice" and the separate constitutional "actual malice" standard. For the sake of clarity, we have changed references to "actual malice" to "express malice" where the court refers to the common-law concept.

malice, the defendant specifically and deliberately intends to injure the plaintiff. We cannot accept the latter proposition because it ignores the relevant definitions of malice. Two types of malice exist in the context of common-law defamation actions: express (malice in fact) and implied (constructive, imputed as a matter of law). Express malice exists when a defendant publishes libelous statements "from motives of ill will, envy, spite, revenge, or any other bad or corrupt motives against the person." *Id.* at 587–88 & n.16. Constructive or implied malice, on the other hand, does *not* mean the defendant acted with ill will but rather that he or she published a defamatory statement without any lawful excuse. *Williams v. Hicks Printing Co.*, 159 Wis. 90, 101, 150 N.W. 183 (1914). *Williams* states:

> [I]n general, malice is an essential element of libel, but not, necessarily, malice in the sense of actual ill will and intent to injure, constructive malice, so called,— *perpetration of the act without lawful excuse*—is sufficient. One need not go further on the subject of malice in proving a charge of libel than to prove the publication, unless the situation is such as to fall within the field of conditional privilege, and then malice in law is circumstantially rebutted and malice in fact, or express malice, as it is otherwise called, is required.

*Id.* (emphasis added).

¶ 22. *Williams* makes clear that neither concept of malice is *categorically* inconsistent with the concept of an "occurrence," as defined in the Cincinnati policy. *Williams* states that accident and inadvertence do not afford a defense to the publisher of a defamatory statement because they "are not inconsistent with malice in law arising, as a legal result, from the perpetuation of the act of publishing." *Id.* Negligence is therefore

consistent with the concept of implied malice. Further, *Williams* makes clear that in some special situations, negligence also coincides with the definition of express malice. Where the defendant asserts a conditional privilege, for example, the law expands the normal "bad or corrupt motives" definition of express malice to *include* negligence:

> If a published article naturally tends [to have a defamatory effect], as suggested, the right to recover general damages follows as [a] matter of course, in the absence of truth as a justification or circumstances of legal excuse, this, as indicated, *not including mere negligence, accident,* good faith, good motives, or sense of duty, *except as said, in the field of conditional privilege* where something more than implied malice is required. General damages, which so follow, may be added to by exemplary damages, upon proof of that [express] malice which overcomes the protection of conditional privilege.

*Id.* at 101–02 (emphases added); *see also Calero v. Del Chem. Corp.*, 68 Wis. 2d 487, 499, 228 N.W.2d 737 (1975) ("When the defendant has established a *prima facie* case of privilege, it ordinarily devolves upon the plaintiff to rebut this showing by proof of actual malice, want of good faith, or *due care*, etc. . . . ." (Citations omitted; second emphasis added.)); *Denny v. Mertz*, 106 Wis. 2d 636, 674, 318 N.W.2d 141 (1982) (Abrahamson, J., dissenting) (noting that although defamation is in general a strict liability tort, "the application of the doctrines of 'conditional privilege' and 'abuse of privilege' means that the law of defamation in operation is not a strict liability tort but is a tort based on *negligence*." (Emphasis added.)).

686

¶ 23. The foregoing discussion demonstrates that a plaintiff may sometimes recover from a defendant even when the defendant publishes a defamatory statement by failing to exercise due care, i.e., negligently. Mere negligence usually will only justify compensatory damages (because only implied malice exists), whereas punitive damages require a showing of various types of ill will or corrupt motives that demonstrate malice in fact. Simple negligence, without more, may also satisfy the "malice in fact" requirement of express malice in special situations, e.g., where the defendant asserts a conditional privilege.

¶ 24. Because the parties agree that the Cincinnati policy purports to offer coverage for negligent defamation, we conclude that the "occurrence" requirement in the policy precludes coverage only for defamation in the following circumstances: (1) ordinary cases where the plaintiff proves express malice or (2) conditional privilege situations where the plaintiff proves express malice upon a showing of fault *exceeding* negligence. It does not deny coverage where a plaintiff proves that Elliott abused a qualified privilege by failing to exercise due care, nor does it deny coverage where a plaintiff can recover without showing express malice, i.e., where Elliott does not put conditional privilege at issue. Thus, we deem the policy nonillusory.

¶ 25. We affirm the circuit court's decision. Because the Wisconsin law of defamation would allow a plaintiff to recover against Elliott without proving wanton and willful, deliberate defamation, we can conceive of some circumstances in which his insurance agreement would require Cincinnati to indemnify him. The policy is therefore not illusory, and we will not read it to cover intentional acts of defamation. We determine

that the plaintiff's complaint alleges only purposeful and malicious defamation, based on the allegations in the body of the complaint, alone and as clarified by the prayer for relief. Further, the court's determination that Cincinnati had no duty to indemnify Elliott provided an independent ground for its conclusion that Cincinnati has no duty to defend Baumann's action against Elliott.

*By the Court.*—Order affirmed.