Robert STUART and Lin Farquhar-Stuart,
Plaintiffs-Respondents,

v.

WEISFLOG'S SHOWROOM GALLERY, INC.
and Ronald R. Weisflog, Defendants-Respondents,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP1287. Submitted on briefs June 22, 2006.
—Decided August 23, 2006.*

2006 WI App 184

(Also reported in 722 N.W.2d 766.)

† Petition to review granted 12/6/06.

252

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul J. Pytlik* and *Michelle M. Stoeck* of *Hills Legal Group, Ltd.* of Waukesha.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Roy E. Wagner* and *Matthew R. Jelenchick* of *Niebler, Pyzyk, Klaver & Wagner LLP* of Menomonee Falls.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. In this appeal, an insurance company attempts to apply certain "business risk" exclusions to preclude coverage where its insured incurs liability for misrepresentation pursuant to Wis. ADMIN. CODE § ATCP 110.02.[1] The policy does include representations about work as an item excluded from the policy by the "your work" exclusion. However, the legislature created code liability with the specific purpose of remedying deficiencies not addressed by common-law mis-

---

[1] All references to the Wis. ADMIN. CODE are to the October 2004 version unless otherwise noted.

representation. We assume if the insurer meant to lump this distinct sort of misrepresentation claim along with common-law claims, it would have said so. We hold the exclusion does not apply. Moreover, the general coverage provisions are broad enough to encompass code misrepresentation claims. The latter qualify as "occurrences" per the policy because intent to deceive is not a necessary element of the cause of action. Further, because the misrepresentations at issue caused the entire series of transactions between the corporation and the customers, the plaintiffs' double damages and attorney fee awards arose "because of" the plaintiffs' property damage. We affirm the trial court's decision that the policy covers the defendants' damages to the plaintiff.

¶ 2. In 1995, Robert Stuart and his wife, Lin Farquhar-Stuart (the Stuarts) contacted Ronald Weisflog, president of Weisflog's Showroom Gallery, Inc. (collectively, Weisflog), a corporation in the business of building and remodeling homes. Specifically, they wished to add a bedroom to their home, to expand the master bedroom, living room, and garage, and to add a hot tub/spa room. In return for an architectural fee, Weisflog agreed to consult with the Stuarts about their remodeling needs and provide them with finalized drawings and a home design.

¶ 3. Weisflog represented to the Stuarts that they were purchasing quality architectural services and that the specifications in the drawings would comply with all applicable building codes. In reality, nobody at Weisflog was a licensed architect and Weisflog was not familiar with parts of the local building code. Relying on these representations, the Stuarts entered a "Remodeling Architectural Contract" that November.

¶ 4. The Stuarts and Weisflog subsequently discussed a new contract. Weisflog again professed famil-

iarity with local code requirements and promised the Stuarts that the proposed improvements would comply with those requirements. The Stuarts again relied on Weisflog's representations and entered into a "Remodeling Contract" in May 1996. This contract set forth the work to be done and with respect to several items specified that they were to be "per plan." Weisflog then constructed and completed the improvements to the Stuart residence.

¶ 5. At some point in 2001, Robert Stuart noticed that the floor in the spa room was spongy in certain places, and his foot went through a soft spot in the floor. When he pulled back the carpeting, he saw a "rotted hole." He also noticed that the windowsills in the room were warped and rotting. Weisflog suggested replacing the rotted wood and putting in tile to replace the carpet, but Stuart opted instead to have a building inspector examine the room.

¶ 6. The inspector's report identified several building code violations he discovered in the course of looking at both the spa room and the rest of the project. The report stated that "significant defects with the design and construction details" required corrective work. Among other defects, he noted improper ventilation of the spa room and attic, the venting of the clothes dryer into the attic instead of directly to the outside, improper clearance to floor joists, lack of access to crawl spaces, the absence of gutters to drain water away from the foundation and overhangs above the spa room, and no ice and water shield for the roof system. He also found mold in portions of the residence. According to the inspector, the damage was so extensive that it made more sense to demolish the spa room and rebuild than to repair it.

255

¶ 7. The Stuarts brought suit against Weisflog and against American Family Mutual Insurance Company, with whom Weisflog had a Commercial General Liability (CGL) policy. The complaint stated causes of action for violations of WIS. ADMIN. CODE ch. ATCP 110 and breach of contract. American Family moved for summary judgment on three grounds. It first claimed that the violations in the complaint failed to trigger coverage. According to American Family, the ch. ATCP 110 violations were not an "occurrence." Moreover, it argued, the double damages and attorney fees the Stuarts sought for the alleged violations did not qualify as property damage but rather were "economic in nature." Alternatively, it claimed that even if initial coverage existed, the business risk exclusions in the policy barred coverage. American Family also invoked the economic loss doctrine to bar coverage for damages associated with the negligence claim. The trial court denied the motion, and a jury trial ensued on the issues of negligence and the ch. ATCP 110 violations.[2]

¶ 8. At trial, several witnesses testified on behalf of the Stuarts, including the building inspector and an environmentalist who noted "very high concentrations" of mold on the property and that some of the mold was toxic. The Stuarts also offered the testimony of a licensed architect, who claimed that the architectural plans were deficient, noncompliant with applicable building codes, incomplete, and that they were "one of the substantial causes of the problems that the Stuarts are dealing with." This expert's report noted that the plans revealed that "major areas of construction are missing or devoid of detail" and that the design plans were "deficient in many other respects based on accepted standard architectural practices."

---

[2] The Stuarts dismissed their breach-of-contract claims.

¶ 9. The jury found Weisflog negligent in both the design and construction of the project. In addition, it found that Weisflog had induced the Stuarts to enter both the "Remodeling Architectural Contract" and the "Remodeling Contract" by making false, deceptive, or misleading representations. It attributed 25% of the $95,000 damages award to the Wis. Admin. Code ch. ATCP 110 violations and the remaining 75% to Weisflog's negligence.

¶ 10. After the verdict, the trial court ordered double damages, pursuant to Wis. Admin. Code ch. ATCP 110 and Wis. Stat. § 100.20(5) (2003–04),[3] but only for the percentage of the award attributable to Weisflog's ch. ATCP 110 violations. Also postverdict, American Family renewed the arguments in its summary judgment motion, claiming that Weisflog's policies did not cover the damages awarded to the Stuarts. The court again denied relief.

¶ 11. All parties appealed. We have already rendered our opinion with respect to several noninsurance-related issues raised by Weisflog and the Stuarts. *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, 293 Wis. 2d 668, 721 N.W.2d 127. In that separate opinion, we rejected Weisflog's contention that because the damages were not based on a breach of contract claim, the economic loss doctrine barred recovery. *See id.*, ¶ 28. First, we noted that the economic loss doctrine is inapplicable in a contract for services. *Id.*, ¶ 32. We concluded that the "Remodeling Architectural Contract" was solely for design and architectural services and that, but for that threshold agreement, the Stuarts never would have entered the subsequent "Remodeling

<hr>

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Contract." *Id.*, ¶ 31. Because we viewed that threshold agreement as the driving force behind the whole project, we treated the contract as one for services. *See id.*, ¶ 32.

¶ 12. Further, we determined that the legislature intended to do more than simply add a remedy to common-law misrepresentation and breach-of-contract claims. *See id.*, ¶ 33. We opined that, instead, it wished to recognize violations of WIS. ADMIN. CODE ch. ATCP 110 as distinct causes of action and that doing so furthered the public policy behind that chapter and WIS. STAT. § 100.20.[4] *See Stuart*, 2006 WI App 109, ¶ 33 (reading all of WIS. STAT. ch. 100 as a whole and noting that the courts have recognized WIS. STAT. § 100.18 as providing a distinct cause of action). That public policy, we said, was to encourage victims of improper home improvement projects to bring forward their causes of action as private attorneys general with the aggregate effect of enforcing the public's rights. *Stuart*, 2006 WI App 109, ¶ 33.

¶ 13. In addition to Weisflog's contention that the economic loss doctrine barred Stuart's recovery, we considered Stuart's contention that the court erred in computing double damages. *See id.*, ¶¶ 43, 50. We noted that the policy behind that provision was, again, to encourage private actions, and "to assess meaningful penalties so as to punish the particular wrongdoer and deter future offenders." *Id.*, ¶ 49. We saw "no place in this framework for apportioning damages where . . . the damages flowed from the initial misrepresentation." *Id.*

---

[4] WISCONSIN STAT. § 100.20(2) provided the authority for WIS. ADMIN. CODE ch. 110. *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, ¶¶ 24, 42, 293 Wis. 2d 668, 721 N.W.2d 127.

Our discussion reiterated that, but for Weisflog's misrepresentations, the Stuarts may not have entered into the contracts and thus avoided the harm, in short, that Weisflog's false statements "were the catalyst for the harm." *Id.* Accordingly, we held that the trial court erred when it awarded double damages only for the 25% of the award that the jury attributed to the misrepresentations. *See id.*, ¶¶ 43, 50.

## Issues Controlled by Our Previous Holding

■

¶ 14. Having decided the matters that Weisflog and the Stuarts raised, we now turn to American Family's appeal. We consider as a preliminary matter American Family's contentions that the Stuarts should not have received any recovery from Weisflog. American Family first contends that the economic loss doctrine precluded the Stuarts' recovery from Weisflog. Based on the discussion in our previous opinion, we reject this argument. *See Stuart*, 2006 WI App 109, ¶¶ 28–34.

■

¶ 15. American Family next challenges the trial court's award of double damages and attorney fees to the Stuarts. It points out that a successful claim for double damages is a necessary predicate for an attorney fees award. Here, American Family claims that *Snyder v. Badgerland Mobile Homes, Inc.*, 2003 WI App 49, 260 Wis. 2d 770, 659 N.W.2d 887, bars coverage because it requires a causal link between a WIS. ADMIN. CODE ch. ATCP 110 violation and a plaintiff's pecuniary loss. American Family takes the position that the Stuarts' pecuniary loss did not flow from Weisflog's misrepresentations and inducement to enter the contract but rather from defective construction work. It relies on the

jury verdict, which awarded the Stuarts $95,000 as compensation for damages resulting from Weisflog's negligence but did not attribute the entire amount to the ch. ATCP 110 violation.

¶ 16. This argument also does not square with our previous holding. As we mentioned above, *Stuart* rejected the notion that we could parse which damages were attributable to negligence and which to the initial misrepresentation. Rather, this court stated that the misrepresentation was the "driving force" for the entire series of transactions between Weisflog and the Stuarts. Thus, we reaffirm that the Stuarts were entitled to both double damages and attorney fees.

### Coverage Issues

¶ 17. American Family also renews its contentions below that to the extent Weisflog was liable to the Stuarts, its CGL policy does not insure against that liability. American Family primarily argues that even assuming initial coverage, two "business risk" exclusions in the policy apply to bar coverage, namely, a "your product" exclusion and a "your work" exclusion. Thus, we will consider first whether either of these exclusions apply. If they do not, we will then examine whether the policy otherwise excludes liability based on WIS. ADMIN. CODE ch. ATCP 110.

¶ 18. In order for us to decide these issues, we must examine and construe the terms of the CGL policy. We do so without deference to the trial court. *See Everson v. Lorenz*, 2005 WI 51, ¶ 10, 280 Wis. 2d 1, 695 N.W.2d 298 (construction of an insurance contract a matter of law for de novo review). When we interpret the terms of an insurance policy, we aim to enforce the

intent of the parties, and we give words in the policy their common and ordinary meaning so that our construction conforms to the understanding of a reasonable person in the position of the insured. *See State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶¶ 13–14, 275 Wis. 2d 35, 683 N.W.2d 75. We resolve ambiguities in favor of the insured, but where the plain meaning favors the insurer, we will resolve coverage against the insured. *Id.*, ¶ 15.

## A. Exclusions from Coverage

### 1. "Your Product" Exclusion

¶ 19. American Family first contends that the trial court should have applied the "your product" exclusion in the CGL policy. This exclusion bars coverage for " '[p]roperty damage' to 'your product' arising out of it or any part of it." "Your product" means, in relevant part, "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by [you]" and includes all "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.' "

¶ 20. The plain language of the exclusion indicates that it does not apply to the facts of this case. By its terms, the type of warranties and representations contemplated by the "your product" exclusion include only those "made at any time with respect to the fitness, quality, durability, performance or use of 'any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by [you].' " Our preceding discussion makes clear that the "driving force" behind the whole series of transactions was not a

warranty about these sorts of goods or products but rather a warranty about the *design* of the remodeling, *i.e.,* that the design would be provided by someone experienced in architecture and that it would comply with the applicable building codes.

### 2. "Your Work" Exclusion

¶ 21. American Family also asks us to consider the "your work" exclusion to its policy coverage. The CGL policy defines "[y]our work" to mean, in relevant part, "[w]ork or operations performed by you or on your behalf," including "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.' " The policy does not further define "work," but given the ordinary meaning of the term, we assume that "work" comprises work that an insured performs in creating a design. If representations about work also constitute "your work," per the policy, then it would seem at first blush that the policy necessarily precludes coverage for misrepresentations about the architectural designs at issue here.[5]

██

¶ 22. We note, however, that this case involves a misrepresentation claim based on Wis. Admin. Code ch. ATCP 110. As we stated above, the legislature intended ch. ATCP 110 misrepresentation to be a cause of action distinct from other forms of misrepresentation. *See also*

---

[5] We observe that the parties spend a great deal of time debating whether a subcontractor exception to this exclusion restores coverage. We deem this issue nongermane, however, because no subcontractors were involved with the initial design. Rather, they simply played a role in implementing the design by doing the construction.

*infra,* ¶ 30 (legislature enacted similar provision to address shortcomings of common-law causes of action). We presume that the insurance industry would be familiar with this legislative intent. Thus, we assume that if an insurer wished to lump this special form of misrepresentation in with the more familiar common-law misrepresentations, it would have specifically mentioned the latter. Because it does not, we can assume that the insurer did not intend its exclusion to apply to code misrepresentation.

## B. Initial Coverage

¶ 23. Given that no exclusion applies, we next turn to whether the general coverage in the CGL policy encompasses Weisflog's liability for WIS. ADMIN. CODE ch. ATCP 110 violations. The policy provides coverage relating to property damage liability. The pertinent section reads as follows:

### SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies . . . .

 . . . .

 **b.** This insurance applies to . . . "property damage" only if:

 **(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It further defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."

### 1. "Not an Occurrence" Argument

#### a. Damages for Misrepresentation Claims Predicated on WIS. ADMIN. CODE ch. ATCP 110

¶ 24. American Family first argues that Weisflog's conduct does not constitute an "occurrence" covered by the policy. It points out that the jury found Weisflog liable for making "false, deceptive, or misleading representations in order to induce [the Stuarts] to enter into a remodeling architecture contract, or to obtain or keep . . . payment under the remodeling architecture contract" and that Weisflog further made false, deceptive, or misleading statements that the work would be code compliant in order to induce the Stuarts to enter the subsequent contract for remodeling. The provisions of WIS. ADMIN. CODE ch. ATCP 110 that this conduct violates are WIS. ADMIN. CODE § ATCP 110.02(4)(d) (no seller may misrepresent that he or she is licensed) and (11). The latter provision deals with misrepresentations in general:

> **ATCP 110.02 Prohibited trade practices.** No seller shall engage in the following unfair methods of competition or unfair trade practices:
>
> . . . .

264

**(11)** MISREPRESENTATIONS; GENERAL. Make any false, deceptive or misleading representation in order to induce any person to enter into a home improvement contract, to obtain or keep any payment under a home improvement contract, or to delay performance under a home improvement contract.

¶ 25. American Family seizes on the "in order to" language in WIS. ADMIN. CODE § ATCP 110.02(11) as the basis of its claim that violations of WIS. ADMIN. CODE ch. ATCP 110 require an element of volition inconsistent with an "occurrence." It cites to *Kalchthaler v. Keller Construction Co.*, 224 Wis. 2d 387, 395, 397, 591 N.W.2d 169 (Ct. App. 1999), which construed an identical definition of occurrence and defined "accident" to mean "an event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result." (Citation omitted.) It also cites to *Doyle v. Engelke*, 219 Wis. 2d 277, 289, 580 N.W.2d 245 (1998), for the proposition that "accident" is an unforeseen occurrence characterized by an absence of intent. According to American Family, because § ATCP 110.02(11) contemplates that a seller makes the representation for a specific purpose, "there is a clear element of intent involved."

¶ 26. American Family invokes *Everson* in support of its conclusion. The plaintiff in *Everson* was the buyer in a real estate transaction. *Everson*, 280 Wis. 2d 1, ¶¶ 4–5. After he bought the property, he discovered that part of it where he wanted to build was located in a one-hundred-year flood plain and was not suitable for construction. *Id.*, ¶ 5. He then sued the seller on theories of negligent misrepresentation, strict responsibility misrepresentation, and intentional misrepresentation. *Id.*, ¶¶ 4–5.

265

¶ 27. The supreme court held that for purposes of insurance liability policies, negligent and strict responsibility misrepresentation did not constitute accidents. *Id.*, ¶ 18. It stated that "[i]njury that is caused by negligence must be distinguished from injury that is caused by a deliberate and contemplated act initiated at least in part by the actor's negligence at some earlier point." *Id.*, ¶ 19 (citation omitted). American Family asserts that *Everson* controls the outcome here and precludes coverage.

¶ 28. We begin by noting that the species of misrepresentation at issue in *Everson* were common-law, not statutory or administrative code misrepresentation claims. Based on the language of WIS. ADMIN. CODE § ATCP 110.02(11), *Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F. Supp. 1227 (W.D. Wis. 1997), *implied overruling on other grounds recognized, Budgetel Inns, Inc. v. Micros Sys., Inc.*, 8 F. Supp. 2d 1137, 1143 (E.D. Wis. 1998), and *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233, we conclude that knowledge or intent with respect to the falsity or misleading nature of a communication is not an element of liability under § ATCP 110.02. *Stoughton Trailers* and *Tietsworth* involved misrepresentation claims based on WIS. STAT. § 100.18(1), the Deceptive Trade Practices Act (DTPA). *See Tietsworth*, 270 Wis. 2d 146, ¶¶ 38–45; *Stoughton Trailers*, 965 F. Supp. at 1236. We construe consumer protection statutes and administrative rules in pari materia in order to best achieve the legislative goal of providing protection and remedies to consumers. *Stuart*, 2006 WI App 109, ¶ 33. Section 100.18(1) contains language very similar to

§ ATCP 110.02(11),[6] so decisions interpreting the former inform our understanding of the latter.[7]

¶ 29. *Stoughton Trailers*, 965 F. Supp. at 1236, stated that a DTPA violation comprises three elements: (1) an advertisement, announcement, statement, or

[6] WISCONSIN STAT. § 100.18(1) reads as follows:

No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, or with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

[7] We also note that the DTPA and WIS. STAT. § 100.20 are both located in WIS. STAT. ch. 100, entitled, "Marketing; Trade Practices." The latter, again, contains the authorizing legislation for WIS. ADMIN. CODE ch. ATCP 110. We generally read statutes in pari materia with closely related and surrounding provisions. *See Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 804–05, 440 N.W.2d 329 (1989) (related subsections); *State v. James*, 2005 WI App 188, ¶ 24, 285 Wis. 2d 783, 703 N.W.2d 727, *review denied*, 2005 WI 150, 286 Wis. 2d 100, 705 N.W.2d 661, *cert. denied*, ___ U.S. ___, 126 S. Ct. 1060 (2006) (same chapter).

representation (2) made with the intent to sell a product, service, or anything else (3) that contains any assertion, representation, or statement of fact which is untrue, deceptive or misleading. Missing from these elements is any sort of scienter, negligence included, with respect to the truthful or misleading nature of the communication.

¶ 30. *Tietsworth* lends further support to the notion that intent vis-à-vis the false or misleading nature of a representation is not an element of a WIS. STAT. § 100.18(1) violation. *Tietsworth* held that the plaintiffs' claim for DTPA misrepresentation failed because all of the affirmative statements the defendant made in that case constituted mere puffery and hyperbole. *See Tietsworth*, 270 Wis. 2d 146, ¶¶ 41–45. The pregnant negative apparent in this discussion was that affirmative statements that constituted *more* than mere puffery would be actionable. Chief Justice Abrahamson's dissenting opinion further hints that the focus is on the quality of the statements themselves. She notes that the legislature intended the DPTA to "address the shortcomings of common law protections for consumers" and that it aimed to remedy "not just overt deception but also implicit deception such as advertising that has the tendency to mislead consumers, intentionally or not." *Id.*, ¶ 82 n.51 (citation omitted). Thus, the hallmark of DATP liability is not intentional or knowing deception but rather whether, in the course of trying to sell something, the seller makes statements that have a *propensity* to mislead.

■

¶ 31. Significantly, WIS. ADMIN. CODE § ATCP 110.02(11) also does not contain any language indicating that the defendant must have knowledge of a representation's potential to mislead. Thus, we agree

with the Stuarts that § ATCP 110.02(11) is intent-neutral with respect to the false or misleading propensities of a representation. Because we construe the statute to be intent-neutral, we hold that WIS. ADMIN. CODE ch. ATCP 110 violations are not inherently inconsistent with the concept of an "occurrence."

¶ 32. Our recent decision in *Baumann v. Elliott*, 2005 WI App 186, 286 Wis. 2d 667, 704 N.W.2d 361, supports our holding. In *Baumann*, the appellant had an insurance policy that defined "occurrence" identically to Weisflog's policy. *Id.*, ¶ 5. The appellant attempted to argue that his policy was illusory because it purported to cover only "negligent defamation." *Id.*, ¶¶ 12, 19. He viewed "accidental defamation" as a contradiction in terms, arguing that as a matter of law, defamatory statements presupposed malice in the sense of intent to injure the plaintiff. *Id.*, ¶ 21. We declared that "malice" did not necessarily mean intent to defame and sometimes simply meant that the defendant published a defamatory statement with no legal excuse. *Id.* (defining "implied malice").

¶ 33. Obviously, whenever a defendant makes a statement, he or she intends to say the words he or she utters. Nonetheless, *Baumann* rejected the notion that the mere utterance of a defamatory falsehood demonstrated an intention to defame. In the same way, the mere utterance of a misleading statement does not mean the person intended to deceive. If uttering a defamatory statement can be an "accident" then so can uttering a misleading statement. Thus, a WIS. ADMIN. CODE § ATCP 110.02(11) violation *can* be an accident and therefore an "occurrence" as defined in Weisflog's American Family CGL policy. For that reason, we hold that WIS. ADMIN. CODE ch. ATCP 110 claims trigger initial coverage.

269

### b. Double Damages and Attorney Fees

¶ 34. In a very similar vein, American Family further contends that the double damages and attorney fee awards are improper because they are based on intentional conduct. We reject this argument. It clearly presupposes that the underlying WIS. ADMIN. CODE ch. ATCP 110 violation was based on intentional conduct. We have just held to the contrary.

### 2. "Not Property Damage" Argument

¶ 35. Weisflog's policy provides that an "occurrence" must give rise to "property damage" in order to trigger coverage; American Family next contests coverage on that basis. It asserts that the Stuarts' double damages and reasonable attorney fee awards are "economic" in nature and do not constitute "property damage." American Family cites to three cases in this section of its brief but offers no explanation of what those cases say or how they apply to this case. Although we need not consider undeveloped arguments, *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed."), we nonetheless do so here because it is readily apparent to us that American Family cannot prevail on this issue.

¶ 36. The CGL policy clearly states that coverage is triggered when Weisflog incurs liability *"because of* property damage." (Emphasis added.) American Family does not argue that the Stuarts suffered no property damage. Indeed, one can hardly characterize problems like mold in the attic and "moisture stains in the original portion of the house" as anything else. Presumably, American Family is again relying on its *Snyder-*

based argument that Weisflog's negligence caused the damage and not the misrepresentation. We rejected that assertion above and concluded that a causal connection does exist between the WIS. ADMIN. CODE ch. ATCP 110 violations and the Stuarts' damages because the parties would not have contracted for the remodeling had the Stuarts known Weisflog had no architectural credentials and was unfamiliar with the building codes. If there had not been any property damage, the court would not have awarded the Stuarts damages for the ch. ATCP 110 violations. But for Weisflog's liability on the ch. ATCP 110 claim, in turn, Weisflog also would not have incurred responsibility for double damages or the attorney fees that flowed from them. Thus, all of these awards were premised on "property damage," per the policy language.

¶ 37. *Cieslewicz v. Mutual Service Casualty Insurance Co.*, 84 Wis. 2d 91, 267 N.W.2d 595 (1978), accords with our conclusion that the CGL policy covers the multiple damages award. That case involved a dog-bite injury. *Id.* at 93–94. The plaintiff received compensatory damages, which the court multiplied pursuant to a statute providing for triple damages. *Id.* at 94. The defendant's insurer appealed because the trial court ruled that its policy covered the multiple damages. *Id.* at 94–95. Aside from the fact that "bodily injury" rather than "property damage" served as the predicate for coverage, the policy mirrored the one here in all relevant respects. *See id.* at 93 (covering "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury"). The court pointed out that the policy language swept broadly enough to bring punitive damages within its reach because it did not specifically limit coverage to compensatory or actual damages. *See id.* at 96–98. "It is the infliction of

bodily injury which gives rise to the cause of action. Once the cause of action arises, punitive or multiple damages are awarded in connection with, or because of, the injuries incurred." *Id.* at 97 (citation omitted). We see no relevant distinction between "bodily injury" and "property damage."

## Conclusion

¶ 38. We affirm the trial court's determination that the American Family CGL policy covers Weisflog's damages to the Stuarts. A code misrepresentation constitutes an "occurrence" because the violation is neutral with respect to a defendant's intent to deceive. Moreover, all the damages awards here flowed from the defendant's liability for property damage, in that but for the misrepresentations, the latter would not have occurred. Finally, neither exclusion applies.

*By the Court.*—Judgment affirmed.